**Jose RAMON–SEPULVEDA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 83–7602.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1984.

Decided Aug. 28, 1984.

As Modified Sept. 25, 1984.

Mark D. Rosenbaum, ACLU Foundation, Los Angeles, Cal., for petitioner.

Ian Fan, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before PREGERSON and NORRIS, Circuit Judges, and SOLOMON, Senior District Judge.[*]

PREGERSON, Circuit Judge:

The issue on appeal is whether the immigration judge violated the clear language of 8 C.F.R. § 242.22 and thus abused his discretion in reopening Ramon-Sepulveda's

nation.

---

[*] The Honorable Gus J. Solomon, Senior District Judge for the District of Oregon, sitting by desig-

deportation hearing after it had been terminated. Section 242.22 precludes granting a motion to reopen based on newly discovered evidence unless the evidence "could not have been discovered or presented at the hearing." The Bureau of Immigration Appeals (BIA) affirmed the immigration judge's decision to reopen. We reverse.

## FACTS

The Immigration and Naturalization Service (INS) instituted deportation proceedings against Jose Ramon-Sepulveda on May 18, 1978, after he had been seized during a factory raid in Rosemead, California. At the time he was seized, Ramon-Sepulveda told the officers that his name was Juan Corona-Covarrubias. At his initial deportation hearing on May 25, 1978, however, he identified himself by both names and his counsel conceded that Jose Ramon-Sepulveda was his real name. The immigration judge then granted Ramon-Sepulveda a continuance at his counsel's request. Ramon-Sepulveda's deportation hearing was then reconvened six weeks later on July 6, 1978.

At the reconvened hearing, Ramon-Sepulveda invoked his Fifth Amendment privilege to remain silent and refused to answer any questions asked by the government or the immigration judge.[1] In particular, he refused to answer questions as to his place of birth. The government then sought to introduce an INS I–213 form, allegedly completed by an INS officer at the time of an earlier arrest. The govern-

ment contended that this form would establish Ramon-Sepulveda's alienage. After Ramon-Sepulveda's counsel challenged the admissibility of the form on the ground of lack of foundation, the government withdrew the proffered evidence. The INS did not ask the immigration judge for a continuance to further develop its case in light of Ramon-Sepulveda's failure to testify. Instead, the INS informed the immigration judge that

> [t]he government has no other documents or evidence to submit and therefore rests its case, [and] we feel that we have proven deportability.

Ramon-Sepulveda's counsel moved to terminate proceedings on the ground that the INS had not met its threshold burden of proving that Ramon-Sepulveda was an alien.[2]

After concluding that Ramon-Sepulveda's silence could be used as an inference of alienage, the immigration judge explained that the government must sustain its burden of proving alienage with "clear, convincing, and unequivocal evidence" under the rule of *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). The immigration judge then terminated the deportation hearing, holding:

> Under the circumstances I find that the government has presented no evidence to prove that the respondent [Ramon-Sepulveda] is an alien and has put in no evidence to indicate that he is deportable.

---

**1.** The government argues that Ramon-Sepulveda's invocation of the Fifth Amendment was improper and unusual. Thus, the government contends that it was legitimately surprised when he did so. It argues that Ramon-Sepulveda's use of the Fifth Amendment was improper because the government had expressly declined criminal prosecution under 8 U.S.C. § 1325 (1982) (illegal entry). Ramon-Sepulveda contends, however, that the government had not declined prosecution under other potentially applicable criminal statutes, *e.g.,* 8 U.S.C. § 1304(e) (willful failure to register), 8 U.S.C. § 1326 (reentry of deported alien), and that his invocation of his right to remain silent was therefore appropriate.

Whether Ramon-Sepulveda properly invoked the Fifth Amendment is not an issue presented

by this appeal. The issue before us is whether the evidence in support of the government's request to reopen the proceedings could have been discovered before the deportation hearing.

**2.** "Evidence of foreign birth gives rise to a presumption that the person so born is an alien" and once the government submits such evidence, the burden of proof shifts to the alien to "demonstrate the time, place, and manner of [his or her] entry into the United States ...." *Corona-Palomera v. Immigration and Naturalization Serv.,* 661 F.2d 814, 818 (9th Cir.1981). However, the government must *first* present "clear, convincing, and unequivocal" evidence of foreign birth. *Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966); *Corona-Palomera,* 661 F.2d at 817.

More than seven months later,[3] the government moved to reopen the proceedings on the basis of a birth certificate from La Piedad, Mexico that bore the name "Ramon Sepulveda." The government supported its motion to reopen with an affidavit from one of its investigating agents, Alex Melendez. The affidavit indicated that the agent had located a neighbor of Jose Ramon-Sepulveda on July 11, 1984 (five days *after* Ramon-Sepulveda's deportation hearing) who had told the agent of Ramon-Sepulveda's alleged birthplace in Mexico. The affidavit was intended to support the government's assertion that material evidence was unavailable to it at the deportation hearing.

The immigration judge decided that Ramon-Sepulveda's deportation hearing should be reopened. He indicated that one of the reasons for his exercise of discretionary authority in favor of the government's motion was Ramon-Sepulveda's initial failure to give authorities his proper name. Before the immigration judge, Ramon-Sepulveda's counsel had made an offer of proof that agent Melendez would testify that he was not even asked to investigate the case until July 7, 1978, the day *after* the earlier deportation hearing had been terminated. The deportation hearing was reopened.

At the reopened hearing, Ramon-Sepulveda continued to assert his right to remain silent. The immigration judge this time found Ramon-Sepulveda deportable for illegal entry into the United States in violation of 8 U.S.C. 1251(a)(2) (1982).[4] The immigration judge found that the birth certificate established Ramon-Sepulveda's alienage. The burden of going forward having shifted to Ramon-Sepulveda,[5] the immigration judge found that Ramon-Sepulveda

had not met his burden of showing the time, place, and manner of legal entry into this country.

Ramon-Sepulveda appealed the reopening of his deportation hearing to the BIA. He contended that the immigration judge had abused his discretion in reopening the hearing because the INS had not shown that the birth certificate could not have been discovered at the time of the initial deportation proceeding as the agency's own regulations required. *See infra*, at page 1309. Ramon-Sepulveda also charged that the INS had not adequately explained its seven month delay in moving to reopen the case from the time that the government first knew his true identity. The BIA affirmed the reopening, stating that the evidence was "not necessarily discoverable prior to the hearing." *In re Ramon-Sepulveda*, No. A23 007 887 (BIA June 21, 1983).

Ramon-Sepulveda timely appealed to this court.

## STANDARD OF REVIEW

■ We review decisions on motions to reopen for abuse of discretion. "The BIA may not act in any way that is arbitrary, irrational, or contrary to law." *Batoon v. INS*, 707 F.2d 399, 401 (9th Cir.1983).[6]

## DISCUSSION

The applicable INS regulation covering motions to reopen reads:

A motion to reopen *will not* be granted unless the [immigration judge] is satisfied that the evidence sought to be offered is material and was not available *and could not have been discovered or presented* at the hearing.

---

3. The government had filed an earlier motion to reopen that was denied because it had not yet properly withdrawn its appeal to the BIA. The government then withdrew its appeal and refiled its motion to reopen.

4. Any alien who enters the United States without inspection may be deported under 8 U.S.C. § 1251(a)(2) (1982).

5. *See supra* note 2.

6. The government notes that we should be especially deferential to discretionary decisions of an immigration judge to reopen deportation proceedings. No matter how deferential our review, we must still find that the immigration judge here abused his discretion because he ignored the plain language of the INS's regulation.

8 C.F.R. § 242.22 (1983) (emphasis added). Another INS regulation, 8 C.F.R. § 103.5 (1983), requires that a motion to reopen must be made for "proper cause," and be supported by "affidavits or other evidentiary material." We have strictly construed the requirement that the evidence "could not have been discovered or presented at the hearing." *See, e.g., Samimi v. INS,* 714 F.2d 992, 994–95 (9th Cir.1983) (BIA denial of reopening reversed; proffered evidence could not have been presented at deportation proceedings); *Sida v. INS,* 665 F.2d 851, 853 (9th Cir.1981) (same).

■ In this case, the birth certificate offered by the INS had not been discovered at the time of the earlier deportation hearing. There is no indication, however, that the birth certificate *could not have been* discovered before the hearing. Nothing in the record justifies the INS's failure to introduce the birth certificate at the initial deportation hearing other than the INS's failure to ask for a continuance. The government advances two justifications for its tardy discovery of the document: (1) Ramon-Sepulveda did not give his true name when arrested, and (2) Ramon-Sepulveda's refusal to testify came as a "surprise."

We are not persuaded by the government's excuses because (1) Ramon-Sepulveda did give his true name only one week after his arrest, which was at least *six weeks* before his deportation hearing, and (2) the agency's appropriate and available remedy for the alleged "surprise" was to ask for a continuance.[7] There is no indication in the record that the agency's prehearing investigation was hampered. In fact, an agent was not assigned to investigate Ramon-Sepulveda's case until *after* the deportation hearing was terminated.

7. The government defends its failure to ask for a continuance by saying "it is clear that a motion to continue would have been denied, given the immigration judge's refusal to allow INS to introduce further evidence." Review of the record indicates that this is far from "clear." The immigration judge was in no way unreasonable toward the government; the government voluntarily withdrew the proffered evidence. The government also justifies its failure to ask

"It is a well-known maxim that agencies must comply with their own regulations." *Confederated Tribes and Bands of the Yakima Indian Nation v. F.E.R.C.,* 734 F.2d 1347 at 1355 (9th Cir.1984) (citing *Memorial, Inc. v. Harris,* 655 F.2d 905, 910–11 n. 14 (9th Cir.1980)). *Cf. United States v. Calderon-Medina,* 591 F.2d 529, 531 (9th Cir.1979) (agency violation of a regulation designed to protect alien invalidates deportation proceeding).

CONCLUSION

We conclude that the BIA abused its discretion in affirming the immigration judge's decision to reopen Ramon-Sepulveda's deportation proceedings because the reopening violated the plain language of the INS's own regulation.

REVERSED and REMANDED.

for a continuance on its assertion that petitioner improperly invoked the Fifth Amendment. Whether petitioner's invocation of the Fifth Amendment was proper is not an issue before us, and thus is not relevant to our decision, *see supra* note 1. Finally, we find somewhat attenuated the government's argument that Ramon-Sepulveda's refusal to testify was such a "surprise" that it overlooked asking the immigration judge for a continuance.