Travis **MURPHY**, Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE**, Respondent.

No. 93–71029.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1995.

Decided May 19, 1995.

John H. Sharer, Donald J. Schmid, Gibson, Dunn & Crutcher, Los Angeles, CA, and Edward L. Xanders, Gibson, Dunn & Crutcher, Irvine, CA, for petitioner.

Norah Ascoli Schwarz, I.N.S., Civil Division, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: BROWNING, D.W. NELSON, and HAWKINS, Circuit Judges.

D.W. NELSON, Circuit Judge:

Travis Murphy petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the determination of the immigration judge ("IJ") that Murphy is deportable to Jamaica, pursuant to 8 U.S.C. §§ 1251(a)(1)(B), 1251(a)(2)(A)(iii), and 1251(a)(2)(B)(i), as an alien convicted of cocaine trafficking after entering the country without inspection. Murphy contends that the BIA decision is not based on substantial evidence because the government did not meet its burden of proof to provide clear, convincing, and unequivocal evidence of alienage, and that the deportation proceedings denied him due process because of the admission of an unauthenticated I–213 and an unauthenticated statement of an agent who was not present for cross-examination. In the alternative, Murphy asks that his case be transferred to the United States district court for de novo determination of his claim to citizenship, pursuant to 8 U.S.C. § 1105a(a)(5)(B). We have jurisdiction under 8 U.S.C. § 1105a(a). We grant the petition for review and vacate the BIA decision.

### FACTUAL AND PROCEDURAL BACKGROUND

After Murphy's conviction for sale or transportation of a controlled substance, the INS issued an Order to Show Cause on February 26, 1993. Murphy, who is homeless, uneducated, and illiterate, appeared pro se at the initial hearing on March 23, 1993, at which he denied all of the allegations other than the drug trafficking conviction and claimed that he was born in the Virgin Islands of the United States. After further questioning, the IJ told Murphy that he needed to obtain proof of his citizenship by birth certificate or parents' or friends' testimony, and continued the deportation hearing until April 15, 1993 to allow Murphy to secure pro bono counsel.

At the deportation hearing, the INS presented various documents in an attempt to establish alienage: (1) the Order to Show Cause, listing respondent's surname in one place as Murphy and in another as Minguez–Contreras, without explanation; (2) an unauthenticated I–213 form signed by INS agent John Wills; (3) two certifications from the Virgin Islands, stating that there was no birth certificate for Travis Murphy on either December 15, 1956 or February 12, 1959 in the records for Saint Thomas or Saint John islands (but not including information regarding the records of Saint Croix); (4) an unauthenticated, undated, unnotarized, and unverified statement from John Wills prepared in support of the deportation proceeding, reporting earlier sworn statements by Murphy that he is from St. Thomas, Virgin Islands and inconsistent, purported admissions that he is from St. Thomas, Jamaica; and (5) a map of Jamaica establishing that there is a St. Thomas parish in Jamaica. Although the INS disclosed none of the exhibits before the hearing, other than the fact that the Virgin Islands had not found a birth certificate for the two dates searched, the unauthenticated exhibits were admitted without objection. Neither Wills nor any other INS witness testified at the hearing, but the IJ found the I–213 form and Wills' unauthenticated statement to be sufficient as prima facie evidence of alienage.

Although the transcript has numerous gaps for which Murphy's responses are listed as "indiscernible," Murphy testified that he was born by home delivery in the Virgin Islands and that he left when he was five to come to New York. He stated that he did not remember the names of the people who cared for him between the ages of six and twelve. At one point he indicated that he thought that their name was Williams, but he was unsure; later, he declined to insist on any name because he could not remember. When he was nine or ten, these people informed him of his birth and told him that his father and mother had died, his mother having succumbed to illness when Murphy was six, resulting from a home delivery. Murphy stated that he travelled to Los Angeles with a friend when he was twelve and then lived on the streets and in an open lot. Murphy indicated that an INS "snitch" had told the INS that he was from Jamaica, but that he himself had never claimed to be from Jamaica and did not associate with Jamaicans.

The IJ found that the INS had produced sufficient evidence to establish a prima facie case creating a presumption of alienage, based on the I–213 form, the affidavit, and the lack of a Virgin Islands birth certificate for the dates searched; consequently, the IJ shifted the burden to Murphy to prove citizenship. The IJ found that Murphy's testimony rebutted the INS evidence so that the burden shifted back to the INS to establish alienage by clear, convincing, and unequivocal evidence. Although the INS offered no further evidence, the IJ found that the government met its burden of proving alienage because Murphy's story was implausible given his "specific statement" (reported in Wills' statement) that he came from St. Thomas, Jamaica. Having found alienage, the IJ then noted that Murphy had failed to demonstrate legal entry to combat the statutory presumption that he was present in the United States in violation of the law, pursuant to 8 U.S.C. § 1361, which shifts the burden of proof to the alien to show time, manner, and place of legal entry. The IJ therefore ordered Murphy deported.

The BIA conducted a de novo review. It found that the INS had established a prima

facie case of alienage with the certification of lack of birth certificates from the Virgin Islands for the dates and places shown, the I–213 form, and Wills' statement. Although the BIA acknowledged that the I–213 merited little weight because Murphy had contested critical statements and had testified that an informant—not Murphy—had told Wills that Murphy was Jamaican, it considered the lack of a birth certificate probative. The BIA also ruled that Wills' statement was entitled to "full evidentiary weight."

The BIA then found that Murphy's testimony lacked credibility because it was uncorroborated. The BIA noted that Murphy offered no evidence of the frequency of unregistered home births in the Virgin Islands, could provide no specifics about the family friends that took him in when he was a small child, presented no death certificates for his parents, offered no testimony from the sole relative mentioned (an uncle), and offered no official papers confirming his adoption at the age of five. Thus, the BIA found that Murphy had failed to satisfy his burden of rebutting the INS' prima facie evidence of alienage by "corroborat[ing] his claim to citizenship" with a "preponderance of credible evidence."

Murphy asks this panel to grant his petition for review and vacate the order of deportation.

## STANDARD OF REVIEW

■ We review to determine whether the deportation order is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); *Trias–Hernandez v. INS,* 528 F.2d 366, 370 (9th Cir.1975). In a deportation proceeding, the government must prove alienage by "clear, unequivocal, and convincing evidence." *Woodby v. INS,* 385 U.S. 276, 281, 284–85, 87 S.Ct. 483, 485, 487–88, 17 L.Ed.2d 362 (1966); *Ramon–Sepulveda v. INS,* 743 F.2d 1307, 1308 n. 2 (9th Cir.1984) (holding that the government must prove alienage by "clear, convincing, and unequivocal evidence of foreign birth" before the burden shifts to the respondent to rebut by demonstrating legal entry).

## DISCUSSION

■ Murphy's claim that the BIA's findings were not supported by reasonable, substantial, and probative evidence, *see Woodby v. INS,* 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966), rests on two grounds: (1) the BIA inappropriately shifted the burden of persuasion to the respondent to prove citizenship by requiring Murphy to rebut the BIA's prima facie evidence of alienage by a preponderance of the evidence; and (2) the BIA gave undue weight to inherently unreliable, unauthenticated hearsay with various indicia of untrustworthiness.

## I. THE BURDEN OF PROOF

The BIA found that the lack of certificates, questionable I–213 form, and Wills' statement were sufficient to create a prima facie case of alienage. According to the BIA, the prima facie case established a presumption of noncitizenship that required Murphy to "go forward with a preponderance of credible evidence to rebut the presumption" that he is not a United States citizen. That is, the BIA asserted that the Government need not prove alienage; instead, it need only "create[ ] a presumption that the respondent is not of United States citizenship." Because the BIA concluded that Murphy's testimony was not credible, it determined that he had not carried his rebuttal burden and that the INS had established alienage. The BIA then concluded that Murphy also had not rebutted the (second) statutory presumption, which arises under section 1361 when alienage is proven, by showing legal entry; therefore, it found that Murphy was subject to deportation.

■ Ninth Circuit precedent is clear that the statutory presumption in deportation cases involving illegal entry of aliens shifts the burden of persuasion to the alien to show time, place, and manner of entry only after the government has *established* alienage by clear and convincing evidence. *Ramon–Sepulveda,* 743 F.2d at 1308 n. 2 (noting that evidence of alienage gives rise to a statutory presumption that shifts the burden to the alien to prove legal entry, the court held that "the government must *first* present 'clear,

convincing, and unequivocal' evidence of foreign birth"); *Iran v. INS,* 656 F.2d 469, 471 (9th Cir.1981) (noting that the government must *establish* alienage before the burden-shifting presumption applies); *see also* National Lawyers Guild, 1 Immigration Law & Defense § 7.11, 7–74 (Clark, Boardman & Callaghan 1994) ("The INS must initially prove alienage at the deportation hearing because it is a jurisdictional matter, and only aliens can have deportation proceedings.... *If* alienage is proven by clear, convincing, and unequivocal evidence, the matter of deportability *then* becomes an issue.") (emphasis added); 8 U.S.C. § 1361. "[A] mere statement that the requisite standard of proof has been satisfied will be inadequate, unless it is clear from the record that it was adequately applied." Gordon, et al., 3 Immigration Law & Procedure § 72.04[13][b], 72–198 (citing *Pryce v. INS,* 568 F.2d 278 (2d Cir.1978)).

The BIA decisions on which the government relies to support the respondent's burden to prove citizenship by a preponderance of the evidence are inapposite. In each case, the respondent's foreign birth was an undisputed fact, but the respondent attempted to prove derivative citizenship based upon a parent's alleged United States citizenship. *See, e.g., Matter of A.M.,* 7 I. & N.Dec. 332, 336 (BIA 1956) (respondent's birth certificate and his testimony at the hearing established that respondent was born in Mexico, but he claimed that his mother was a United States citizen); *Matter of Vergara,* 15 I. & N. Dec. 388, 388–89 (BIA 1975) (respondent admitted at the hearing that she was a native of Mexico, but claimed derivative citizenship based on her father's alleged citizenship); *Matter of Tijerina–Villarreal,* 13 I. & N.Dec. 327, 327–328 (BIA 1969) (at the hearing, respondent conceded that he was born in Mexico but claimed derivative citizenship based on his father's citizenship and residence in the United States). Similarly, in *Matter of Levya,* the respondent admitted at the hearing that he was born in Mexico and provided no evidence to support his naturalization in the intervening time. *Matter of Levya,* 16 I. & N.Dec. 118, 119 (BIA 1977). Thus, the BIA found in these cases that the

presumption of alienage arose upon persuasive, direct proof of foreign birth. *Id.* at 120.

■ The government claims that our opinion in *Corona–Palomera v. INS,* 661 F.2d 814 (9th Cir.1981), supports its use of the "foreign born" presumption to shift the burden of persuasion to Murphy in this case or in any case where the government has merely made out a prima facie case of alienage. *Cf. id.* at 818 (foreign birth certificates in respondents' names were sufficient to establish alienage due to foreign birth, where the respondents refused to testify, and thus shifted the burden to respondents to show legal entry). We disagree. In *Corona–Palomera,* we found that authenticated foreign birth certificates were sufficient, without rebuttal, to establish alienage. That is, we acknowledged the "foreign born" presumption as a special case where alienage is established by unrebutted direct proof by the alien's own testimony at the hearing or admission in evidence of an authenticated foreign birth certificate. *See id.* We did not suggest that merely setting forth a prima facie case of alienage based on circumstantial evidence of foreign birth shifts the burden of persuasion to the respondent. We specifically discussed the government's burden of *establishing* alienage as a precondition to the burden-shifting presumption. *See Corona–Palomera,* 661 F.2d at 816 n. 2, 818 ("Once alienage is established, the presumption raised by 8 U.S.C. § 1361 arises."); *see also Veneracion v. INS,* 791 F.2d 778, 779–80 (9th Cir.1986) (finding that the respondent's visa application and attached foreign birth certificate created a burden-shifting presumption under sections 1184 and 1361); *Tejeda–Mata v. INS,* 626 F.2d 721, 725 (9th Cir.1980) (finding that once alienage is established by admission of foreign birth, the burden of proof shifts to alien to prove time, place, and manner of entry), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982); *Cabral–Avila v. INS,* 589 F.2d 957, 959 (9th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979) (finding that the INS had established alienage with the properly admitted and uncontested I–213 form and testimony of INS agents, where the respondent failed to testify and controvert that evidence, and then shifting the burden to the aliens to

demonstrate nondeportability); *Farrell v. United States,* 381 F.2d 368, 369 (9th Cir.) (finding that the respondent's admission of foreign birth and his foreign birth certificate conclusively established alienage), *cert. denied,* 389 U.S. 963, 88 S.Ct. 349, 19 L.Ed.2d 377 (1967). Only at a de novo district court hearing on citizenship under section 1105a(a)(5) does the alien subject to deportation bear the burden of proving citizenship by a preponderance of the evidence. 8 U.S.C. § 1105a(a)(5).

■ The BIA's misapplication of the burdens of proof, which required the respondent to rebut, by a preponderance of the evidence, the presumption of alienage established when the INS set forth a prima facie case, improperly relieved the government of its burden of proving alienage by clear and convincing evidence. In contrast to the situation in *Corona–Palomera,* the government here produced no foreign birth certificate for Murphy. Nor did Murphy admit in sworn testimony at the hearing that he was a foreign-born alien. The government merely set out its prima facie case of alienage based on circumstantial evidence. Prima facie evidence is "evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence." Black's Law Dictionary 1190 (6th ed. 1990). The presumption established by a prima facie case does not reduce the government's burden of persuasion, but merely requires the opponent to go forward with evidence. *See, e.g., Hale v. Department of Transportation,* 772 F.2d 882, 885 (Fed.Cir. 1985). The burden of persuasion remains on the government at all times to establish alienage by clear and convincing evidence, which "is a heavier burden than the preponderance of the evidence standard." Modern Federal Jury Instructions, Model Civil Jury Instructions for the Ninth Circuit § 5.02, 9–27 (Ninth Circuit Jury Committee 1993). Therefore, the government cannot claim that it established foreign birth when it set forth its prima facie case, in order to shift the

burden of persuasion to Murphy to prove citizenship.

Thus, we hold that application of the "proof of foreign birth" presumption in this case impermissibly shifted the burden of proof to the respondent on the question of alienage.

## II. *WEIGHT OF THE EVIDENCE*

■ In addition to shifting the burden of persuasion impermissibly, the BIA gave significant weight to evidence that was inherently unreliable. First, the BIA gave the lack of a Virgin Islands birth certificate significant weight, noting that "if unexplained or uncontradicted," the lack of birth certificates would support a reasonable conclusion of alienage. As noted·above, we have held that the production of a valid birth certificate from another country in the defendant's name is sufficient to prove alienage when there is no contradictory evidence. *See Corona–Palomera v. INS,* 661 F.2d 814, 816 (9th Cir.1981) (finding that unrebutted birth certificates from Mexico in the respondents' names were sufficient evidence to establish alienage). The BIA apparently gave as much weight to the *absence* of certificates for two dates on only two of the country's islands under a name that the INS asserts is not the father's name (because the I–213 lists the father's name as Williams and includes Minguez–Contreras as an alternate surname for the respondent). In addition, the absence of a birth certificate in this case merits less weight, because Murphy provided a reasonable explanation for that absence—the fact that he was born at home.

■ Second, the unauthenticated I–213 merits little (if any) weight, as acknowledged by the BIA. Murphy disputed the significant information, such as place of birth, names of parents, and use of the aliases "Trevor" and "Robert Williams." Murphy also provided information regarding the source of the information recorded on the form, an INS informant who apparently had some ulterior motive to make statements against Murphy.[1] Furthermore, there were

---

**1.** As evidenced in *Cunanan v. INS,* 856 F.2d 1373, 1374 (9th Cir.1988), the alien is not necessarily the source of the information on the I–213

form filed by the INS in the alien's deportation proceeding. In that case, the citizenship infor-

unexplained cross-outs and handwritten additions to the form. Most prejudicial to Murphy, there was no testifying witness subject to cross-examination to verify the source of the information, the time lapse between the gathering of the information and its recording, or the reasons for the uninitialed changes in the form. See Cruz Espinoza v. INS, No. 94–70094, slip op. 3857, 3866 (9th Cir. Apr. 7, 1995) (recognizing that section 1252(b)(3)'s purpose would be frustrated if the government did not provide a reasonable opportunity to cross-examine witnesses whose hearsay statements are used against the respondent, when the respondent presents evidence controverting those statements). In spite of these numerous problems casting doubt on the validity of the form, the BIA gave it "some" weight.

■ Third, the BIA gave "full evidentiary weight" to the statement signed by agent John Wills. Yet the statement contains uncorroborated double hearsay reporting two separate alleged interactions between Murphy and other agents, Cavaretta and Duquette. It is not clear from his statement whether Wills witnessed the reported exchanges. The statement reports drug transfers on several different dates, without linking these specific events with Murphy's conviction for drug trafficking. The purported admissions of Jamaican provenance are at least suspicious, both because of the awkward nature of the reported dialogues and because of Murphy's inarticulateness. That is, without the officer's testimony on cross-examination, the statement is subject to speculation and hardly worthy of full evidentiary weight. See Martin–Mendoza v. INS, 499 F.2d 918, 921 (9th Cir.1974) (approving the hearing officer's determination that the "weight [of a sworn statement] is necessarily impaired by the fact that the affiant could not be presented for cross-examination"), cert. denied, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975). Because Wills prepared the statement specifically "in support of [the]

deportation proceeding against Travis Murphy," the lack of a date and the failure to verify and/or notarize the statement is especially worrisome and casts significant doubt on its trustworthiness. The BIA concedes that "[t]he hearsay nature of a given item of evidence may well have a substantial effect on the probative value of that evidence." Matter of Ponco, 15 I. & N.Dec. 120, 123 (BIA 1974). Yet, because of the additional burden imposed upon Murphy of rebutting the government's prima facie case of alienage with a preponderance of evidence, the BIA, in effect, deemed Wills' unverified, undated, and controverted hearsay statement to be clear and convincing evidence that Murphy is not a citizen.

■ Fourth, the BIA improperly discredited Murphy's testimony.[2] Usually, a credibility determination is based on an assessment of the witness' demeanor and consistency in answering questions. See Nasseri v. Moschorak, 34 F.3d 723, 726 (9th Cir.1994); Martinez–Sanchez v. INS, 794 F.2d 1396, 1400 (9th Cir.1986). Here, the IJ did not rule that Murphy's demeanor or inconsistency in testimony indicated that his statements were untrustworthy. In fact, the IJ found that Murphy's testimony satisfied his burden of production in rebutting the INS' prima facie case, thus shifting the burden of production back to the INS. Yet, the IJ and the BIA found Murphy's testimony incredible because he was unable to produce documentary or testimonial evidence corroborating his statements and because his testimony seemed implausibly "vague."

Testimony should not be disregarded merely because it is uncorroborated and in the individual's own interest. See, e.g., Cho v. INS, 669 F.2d 936, 940 n. 6 (4th Cir.1982). Although this court accords deference to the IJ's credibility findings, those findings must be supported by "specific, cogent reason[s]." Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987) (citing Damaize–Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986)). The court

mation on the form cannot be considered an admission of the alien.

2. Although this argument is not raised directly by Murphy in his brief, he has not waived it, because the challenge to the IJ's conclusion that his

testimony failed to rebut the presumption of alienage encompasses a challenge to the IJ's credibility determination. See, e.g., Aguilera–Cota v. INS, 914 F.2d 1375, 1383 n. 8 (9th Cir.1990).

assesses whether the reasons are "valid grounds" that "bear a legitimate nexus" to the BIA's conclusions. *Aguilera–Cota v. INS*, 914 F.2d 1375, 1381 (9th Cir.1990) (citing *Vilorio–Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir.1988)). The BIA's insistence on documentary evidence regarding frequency of home births and lack of birth registrations is unreasonable, given an illiterate defendant who was able to engage pro bono counsel only a few weeks before the hearing date. Similarly, the insistence on testimony from friends and family is unreasonable, given Murphy's statement that he has lived on the streets since he was twelve. Finally, the BIA's insistence that Murphy should have been able to provide a "certified adoption decree" is unreasonable: The use of the term "adopted" in the letter requesting appeal to the BIA, handwritten by a fellow inmate, is surely meant to refer to the fact that friends of Murphy's family took him in and brought him to the United States and not to suggest that he was adopted through an official adoption process, something that he has never claimed. The government's assertion that it is odd for Murphy to know that he was born at home is not persuasive. It would not be unusual for a nine-year-old boy in Murphy's childhood situation to ask about his family and his birth; in fact, it would be highly unusual for a child not to ask those questions and not to remember at least the gist of the responses. Thus, the BIA's dismissal of Murphy's story as "incredible" seems to be grounded in conjecture rather than in contradictory evidence produced by the government.

Assuming arguendo that the unauthenticated I–213 form and Wills' statement are admissible without violating due process, they do not constitute clear and convincing evidence of alienage because they carry numerous indicia of untrustworthiness. *See Guzman–Guzman v. INS*, 559 F.2d 1149, 1150 (9th Cir.1977) (finding that statements of testifying witnesses, though admissible, were insufficiently trustworthy to satisfy the "more demanding" substantial evidence test). Especially in light of Murphy's controversion of the significant facts, a reasonable juror would be compelled to find that there is not substantial evidence supporting the BIA's de-

termination that the INS proved alienage. *See INS v. Elias–Zacarias*, 502 U.S. 478, 483, 112 S.Ct. 812, 817, 117 L.Ed.2d 38 (1992). Because we find that the BIA erred in shifting the burden of persuasion to Murphy and rested its determination on insubstantial evidence, we need not reach the other issues raised by Murphy on appeal.

### *CONCLUSION*

The government presented only unauthenticated hearsay evidence to support its claim that petitioner Travis Murphy, an uneducated and homeless person who claims to have been born in the Virgin Islands, is actually a citizen of Jamaica. In spite of serious indicia of untrustworthiness, the BIA gave considerable weight to the government's evidence. Murphy testified in his own behalf and offered a plausible explanation of the lack of corroborating evidence. Because the BIA gave significant weight to inherently unreliable evidence and shifted the burden of persuasion to Murphy, it inappropriately concluded that the government had met its burden of proving alienage by clear and convincing evidence. Because the BIA's determination is not based on substantial evidence in the record as a whole, we hereby grant Murphy's petition to review the BIA decision, vacate, and remand to the BIA for further proceedings in accord with this opinion. We also retain jurisdiction over any further appeal in this case after remand.

PETITION FOR REVIEW GRANTED, DECISION VACATED, AND REMANDED.