114 F.3d 1193
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kulvir Singh BARAPIND, Petitioner-Appellant,
v.
Clifton ROGERS, District Director, Respondent-Appellee.
 No. 96-55541.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1997.
Decided May 15, 1997.
 
 1
 Before: BOOCHEVER, NOONAN and KOZINSKI, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Kulvir Singh Barapind (Barapind) filed a petition for habeas corpus to challenge an order of deportation by an immigration judge (IJ) and the affirmance of the IJ by the Board of Immigration Appeals (Board). The district court remanded to the Board. Barapind appeals.
 
 
 4
 The case arises in the context of the conflict raging since 1983 in Punjab where Sikhs are agitating and fighting to create a new nation, Khalistan, and the horrors of civil strife, reinforced by religious differences, have multiplied. In the course of this conflict the government of India has resorted to gross disregard of human rights--torture of suspects; detention of suspects for months or years without trial; abduction of suspects by the police without acknowledgment by the police that the kidnappings have occurred; and murder of suspects by the police in "encounters" or "escapes" staged by the police. At the same time rebel Sikhs have themselves engaged in terrorism, including assassination, against the government of India and local collaborators. Amnesty International has given an evenhanded account of the violence on both sides, Amnesty International, AI Index ASA 20/11/91, India. Human Rights Violations in Punjab: Use And Abuse of the Law (May, 1991). We draw our summary of the situation from this report which was submitted by Barapind and used extensively by the Board in its opinion.
 
 
 5
 In this maelstrom where political activities can shade into armed revolt and dissident views can be mistaken for treason and where death can be the penalty lawlessly exacted for political opinion, the Board has the difficult task of discerning the asylum-seeker persecuted on account of political opinion from the terrorist wanted for crime. The closest attention to the evidence properly presented is essential to the performance of this task where human life may be at stake. It is with regard for this heavy responsibility that we modify and affirm the order of remand to the Board with an explanation of why remand is required.
 
 PROCEEDINGS
 
 6
 On April 25, 1993 Barapind attempted to enter the country and was detained by the Immigration and Naturalization Service (INS), in whose custody he has remained. At exclusion proceedings at San Pedro, California, he conceded deportability and applied for asylum and withholding of deportation. Lauren Mathon, the IJ presiding over his hearing, denied his application and ordered him excluded. The Board affirmed. On August 3, 1994 Barapind filed this petition for writ of habeas corpus in the district court. The matter was referred to a magistrate judge, who recommended remand to the Board to decide the case in accordance with a proper understanding of the law. The district court accepted the recommendation and so ordered.
 
 
 7
 Barapind appeals the order of remand. The respondent argues that no remand is necessary and asks for affirmance of the order of exclusion.
 
 ANALYSIS
 
 8
 The Board held that what it characterized as Barapind's "primary persecution claim" was not supported because the IJ had found Barapind's testimony to lack credibility. The Board referred in a conclusory way to the main reasons for the IJ's negative determination, in effect inviting us to examine the IJ's exposition of her reasons. See Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir.1994). We review the IJ's credibility finding to determine whether it is supported by specific and cogent reasons that are substantial and bear a legitimate nexus to the finding. Aguilera-Cota v. INS, 914 F.2d 1375, 1381 (9th Cir.1990); Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987).
 
 
 9
 The INS argues as a preliminary matter that Barapind waived any challenge to the adverse credibility finding by not raising the issue before the Board. We disagree. By challenging the IJ's ultimate finding on asylum and withholding of deportation Barapind sufficiently challenged the credibility finding that formed the basis for the IJ's determination. Murphy v. INS, 54 F.3d 605, 611 n. 2 (9th Cir.1995); Aguilera-Cota, 914 F.2d at 1383 n. 8.
 
 
 10
 Several of the IJ's reasons for the adverse credibility finding do not afford a basis for that determination. In particular, the IJ thought that Barapind's "stoic" demeanor as he testified to torture by the Indian police was a sign that he was lying. Such an inference appears to reflect cultural bias on the part of the IJ. In many cultures and for many human beings the stoic acceptance of misfortune is expected from persons of constancy and courage. Sikhs have long enjoyed the reputation of being "unsurpassed" as soldiers because of their "hardy and brave" nature. See, e.g., Lepel Griffin, Rajit Singh 36-37 (1892). There is no reason to equate a brave or even cheerful demeanor with absence of suffering. A lie is not proved or even suggested by the proverbial stiff upper lip.
 
 
 11
 The IJ also doubted Barapind's testimony because he said that he was 29 and she thought that he looked 40. We see no basis for the IJ to have thought her own sizing up of the physical appearance of an alien gave her a superior insight into the age of the Sikh before her; still less do we see how her hunch showed that Barapind was lying.
 
 
 12
 The IJ also attached importance to the fact that in his asylum application Barapind claimed that as a result of the police applying electric current to parts of his body the skin peeled off his penis. At the hearing Barapind corrected this statement to say application of the electricity made it feel as though the skin peeled off. The difference between these two statements, particularly as the inaccurate one was corrected at the hearing, was not such that one would conclude that the application was deliberately false. Compare Martinez-Sanchez v. INS, 794 F.2d 1396, 1400 (9th Cir.1986) (trivial errors and inconsistencies between asylum application and testimony regarding number of children alien had and precise date alien joined right-wing paramilitary group are not a valid ground on which to base adverse credibility finding), Damize-Job v. INS, 787 F.2d 1332, 1337 (9th Cir.1986) (discrepancy in dates of birth of alien's children trivial), and Zavala-Bonilla v. INS, 730 F.2d 562, 566 (9th Cir.1984), with Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir.1992) (discrepancies in number of times alien was arrested and incarcerated and whether persecutors broke alien's jaw were significant and were properly considered in assessing credibility), Estrada-Posadas v. INS, 924 F.2d 916, 919 (9th Cir.1991) (discrepancy concerning whether alien's brother was alive or had been killed by authorities was significant), Ceballos-Castillo v. INS, 904 F.2d 519, 520 (9th Cir.1991) (discrepancy over who persecuted alien, guerrillas or government, was significant), and Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988) (unexplained failure to mention any encounters with guerrillas in asylum application significantly contradicted by testimony about several encounters). Barapind's explanation that it was a mistranslation of his Punjab is plausible. Whether in the original or the corrected form, his testimony points to a hideous invasion of his body. It is little better than pedantry to treat him as a liar because the written application failed to be precise. See Aguilera-Cota, 914 F.2d at 1382.
 
 
 13
 The IJ also doubted Barapind because he had remained four years in India after he had been arrested and tortured. Again, the inference by the IJ seems to reflect her own cultural bias. Bravery is not to be confused with absence of fear. Singh v. Moschorak, 51 F.2d 1031, 1034 (9th Cir.1995). A courageous person, committed to a political cause, will remain in the land of his birth as long as he believes he has a chance of advancing his cause.
 
 
 14
 The IJ also doubted that the Indian government would have twice arrested and detained Barapind but both times let him go if in fact he was a leader of the All India Sikh Student Federation (AISSF) as he claimed he was. Rather, these facts suggest that the Indian government did not possess evidence of criminal conduct by Barapind but did have occasion to want to discourage his political activities. See Lopez-Reyes v. INS, 79 F.3d 908, 912 (9th Cir.1996) (the IJ's "personal conjecture" about what alien's persecutors would or would not do is "not a substitute for substantial evidence"); Del Valle v. INS, 776 F.2d 1407, 1413 (9th Cir.1985) (alien's release by persecutors may not be sole basis for concluding alien is unlikely to suffer persecution on return to home country). The IJ also found Barapind not credible because he offered no newspaper articles corroborating that he was a leader of the AISSF. On this point, the IJ was simply mistaken in her recollection of the facts. Barapind did offer an article from an Indian newspaper identifying him as "Secretary" of the organization. The IJ also took into account that Barapind did not provide corroboration of his brother-in-law being severely beaten in the Punjab in August 1992. But corroborating affidavits have "never been required to establish an applicant's credibility." Lopez-Reyes, 79 F.3d at 912. We also note that Barapind introduced testimony corroborating his political involvement and his imprisonment and torture. In sum, the string of points made by the IJ in her negative credibility determination are a string of zeros. No matter how many zeros are added, the result is still zero.
 
 
 15
 There is, however, one point which the IJ incorporated into her determination that cannot be dismissed as a zero. It is that after he had entered the country and understandably used a false passport and given a false name on entry, see Turcios, 821 F.2d at 1400-01, Barapind changed his alias and used another false alias after he had obtained counsel and was involved in the immigration process. Specifically, while his counsel was moving for a change of venue for the exclusion hearing Barapind went under the name of Paramjit Singh. There is no credible excuse for this deception. Even if one supposes that, as a reaction to long persecution in India Barapind had become accustomed to using aliases, he had no reason to deceive American authorities; with the advice of counsel available, he had every reason to tell the truth in the legal process that would determine whether he was eligible for asylum. This lie might well be a basis for scepticism as to Barapind's tale of persecution. What is not clear, however, is whether the IJ or the Board reached their rejection of Barapind's testimony on this basis alone or whether it was with the addition of all the other factors that we have found nonprobative that they reached their conclusion. We are inclined to believe that it was the convergence of all the factors that the Board relied on. When most of the factors must be disregarded, the credibility question is different.
 
 
 16
 Our doubt as to the Board's basis for rejecting Barapind's own testimony is fortified by the Board's reliance on that testimony in what the Board characterized as its alternative basis for decision. The Board relied on a variety of statements by Barapind as to his activities in the Punjab which it found to be reason to exclude him as a danger to the security of the United States, 8 U.S.C. § 1253(h)(2)(D), 8 C.F.R. §§ 208.14(d)(3) & 208.16(c)(2)(iv). If everything that Barapind said was suspect as lies enhancing his political status in the Punjab, it is not easy to see how the Board could so confidently paint the picture it did. In short, because the Board's opinion does not inform us that it rejected all of Barapind's testimony and rejected it solely on the basis of his use of an alias in a motion for a change of venue and several hearings, it is appropriate to give the Board the opportunity to clarify or revise its decision.
 
 
 17
 The appropriateness of remand is supported by three other errors. First, the Board, relying on its own decision in Matter of R--, Interim Dec. 3195 (BIA 1992), alternatively determined that Barapind was ineligible for asylum or withholding of deportation because he had not established a well-founded fear of persecution. On several occasions we have rejected the central premise of Matter of R-- that law enforcement efforts against militants cannot constitute persecution on account of political opinion. Surinder Singh v. Ilchert, 69 F.3d 375, 379 (9th Cir.1995) (per curiam); Harpinder Singh v. Ilchert, 63 F.3d 1501, 1508-09 (9th Cir.1995); Blanco-Lopez v. INS, 858 F.2d 531, 534 (9th Cir.1988). The district court correctly determined that this case should be remanded for the Board to determine Barapind's eligibility for asylum and withholding of deportation under the correct legal standard.
 
 
 18
 Second, as we stated above, the Board's decision rested on an alternative ground of Barapind's danger to national security. The district court held that this finding was erroneous, and the government does not appeal that determination.
 
 
 19
 Third, the IJ in her decision treated as established facts certain allegations of the Indian government about Barapind which had not been proved in the hearing. Although in finding that Barapind lacked credibility the IJ specifically disclaimed reliance on these allegations, her assessment cannot have been wholly unaffected by allegations to which she "accord[ed] substantial weight" in her alternative holding, because the allegations were of the most serious kind and went directly to show criminal character. Although the Board did not incorporate these allegations into its opinion and stated that it was not considering them, the Board depended on the IJ's credibility determination. We think that the Board should have the opportunity of reassessing credibility without the negative implications of its own national security risk treatment of Barapind and without a credibility assessment affected by the allegations that the IJ treated as fact.
 
 
 20
 These allegations were contained in a Request for Provisional Arrest for the Purpose of Extradition by the government of India. A letter from Satish Kumar Sharma, the senior superintendent of police in Jalandhar, India, to the Department of Justice of the United States dated July 24, 1993, noted that there were thirty charges pending in India against Barapind. According to these charges, Barapind had injured eleven and killed fifty-two persons. The charges were bolstered by a notarized affidavit of Sharma stating that he had personally reviewed all the investigation reports regarding Barapind. On the basis of these documents the IJ stated that Barapind was ineligible for asylum "because he has killed people for their political opinions."
 
 
 21
 In the IJ's finding, the crimes alleged by the Indian police officials were found as facts. But no law provides for proving in our tribunals the criminal charges made by a foreign government. If the government of India wanted to extradite Barapind it would have to establish in a judicial proceeding in this country that there was "evidence sufficient to sustain the charge." 18 U.S.C. § 3184. The issue before the court would not be the guilt or innocence of the extraditee nor would the court be in a position, even after hearing both sides, to say whether or not the crimes charged had actually occurred. Under the relevant treaty provisions, extradition would be denied if Barapind proved "that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime or offen[s]e of a political character." Extradition Treaty Between the United States of America and Great Britain, Dec. 22, 1931, art. 6, 47 Stat. 2122, 2124 (1932), applicable to India in accordance with art. 14 from Mar. 9, 1942 (U.S. Dep't of State, Treaties in Force 113 (1993)). The IJ, taking the Indian police allegations at face value, performed a function not authorized by law and reached an assessment of Barapind unwarranted by the evidence before her in the case.
 
 
 22
 The government asks us to include in the remand a direction to the Board to consider these documents. We have no reason on this appeal by Barapind to grant a request by the government which amounts to an appeal from the district court's order. The normal way of seeking extradition has been provided by statute.
 
 
 23
 A late breaking development--too late for briefing by the parties--has been a decision of this court in a social security case, Forney v. Chater, 108 F.3d 228 (9th Cir.1997). The reasoning of Forney applies to our case. Under it, a remand by the district court satisfies the requirement of finality. Id. at 232. At the same time a prevailing party on a remand "normally may not appeal the decision in its favor." Id. The reason is that circuit court review of the order "would be subject to all the disadvantages of piecemeal appeals": unnecessary decisions waste judicial effort, interfere unduly with the district courts or agencies, and require us to adjudicate on less than a full record. Id. at 233. The case is different when the remand forecloses a claimant before the agency from obtaining all of the benefits he seeks. In the present posture of this case the remand has this preclusive effect because it upholds the Board's finding that Barapind is not credible. The handicap imposed on Barapind realistically prevents him from obtaining the relief he seeks. As this case has already been briefed and argued, the true waste of judicial effort would be to decline to decide it and to postpone to an indefinite future what would probably be Barapind's appeal on the credibility issue. Accordingly, we treat this case as an exception to the normal rule on remands.
 
 
 24
 We AFFIRM the order of REMAND of the district court, modifying it to incorporate the explanation afforded by this opinion.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3