BERZON, Circuit Judge, dissenting:
I would grant the petition and remand to the Board of Immigration Appeals (BIA) for further proceedings. As the government counsel recognized at argument, the BIA limited its holding to affirming the Immigration Judge’s (IJ) conclusion that the Ethiopian court document is fraudulent, without passing on the IJ’s decision to discount the brother’s testimony. The majority now does the same. But whether the IJ’s determination about the authenticity of the document is supported by substantial evidence is not necessarily determinative of Kifle’s asylum claim. If the brother’s testimony about receiving the document at the family home from three uniformed police is taken as credible, Kifle could still have a well-founded fear that the police would act on a fraudulent document, taking her into custody and harming or killing her. By slapping any assessment of the brother’s credibility, the BIA fails to grapple with this possibility.
Moreover, the IJ’s assessment of this asserted ground for a well-founded fear is certainly not self-evidently convincing. The IJ discounted the brother’s testimony because it came from a person with motivation to lie, and also because “it turns [the document] into a ... talisman ... [whose] existence alone shows the danger to the respondent ... [G]iving a talismanic quality to [the] document is simple bootstrapping.” [AR 66]
The first consideration — motive to he— would, of course, allow IJs to disbelieve, without more, all testimony by asylum applicants and their relatives. That is decidedly not the law — some other cogent basis for disbelief must appear. See Murphy v. INS, 54 F.3d 605, 611 (9th Cir.1995) (“Testimony should not be disregarded merely because it is ... in the individual’s own interest.”).
The second, “talisman,” reason, to the degree it is coherent, is simply inaccurate. If one believes the brother, there was not just a fraudulent document sent on to Ki-fle. Instead, there was a document delivered to Kifle’s family home by three uniformed policemen whose accent indicated that they were of Tigre nationality, an identification confirmed by “a mark on their eyebrows,” and who spoke angrily and “in a forceful manner.” [AR 288] Kifle is of Amhara ethnicity and was active in the prior, Amhara-dominated Mengistu government. Members of the Tigre ethnic group are prominent in the new government, which ousted the Mengistu regime, and are often at odds with the Amhara. [See AR 450,184]
Also, the brother reported that police had come earlier looking for Kifle, and “tried to scare us, terrorize us, and ... said it’s better if you tell us where she is.” [AR 290] Further, the brother reported that he knew of someone else who had received a similar document, and that person was later captured and disappeared. [AR 293] Thus, if the brother is credited, there would be ample reason to believe that hostile people appearing to be government officials were looking for and threatening Kifle because of her past political activities, even if the document they delivered to give an official appearance to their threats was doctored.
Because the BIA has not yet addressed the central issues of the brother’s credibility and the pertinence of his testimony if believed, I would grant the petition and remand for that purpose.