### BECHTEL v. UNITED STATES.
### No. 12093.

United States Court of Appeals
Ninth Circuit.

Aug. 5, 1949.

Wayne M. Collins, San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., Edgar R. Bonsall, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellant Bechtel was born in Germany in 1900, served as a private in the German army during World War I, left Germany when 20 years old and spent 5 years in Sweden, then, in 1925 migrated to the United States and ultimately made his home at Oakland, California. In 1927 he filed his declaration to become a citizen. He was granted citizenship by judgment of the Superior Court of Alemeda County, California on February 23, 1934.

These denaturalization proceedings were filed against him on December 22, 1942, in the court below, under the authoriy of section 338 of the Nationality Act of 1940, 8 U.S.C.A. § 738, charging that his naturalization was procured illegally and by fraud in that he was not, as he represented a person attached to the principles of the Constitution and well disposed to the good order and happiness of the United States, that he did not truly intend to become a permanent citizen of the United States, and that his oath of allegiance then taken was false in that he did not absolutely and entirely renounce and adjure all allegiance to any foreign state or sovereign, but retained allegiance to Germany and did not intend to bear true faith and allegiance to the United States, or to support and defend the Constitution of the United States.

Judgment canceling appellant's certificate of naturalization was entered March 31, 1944. The only question raised upon the appeal which we need notice is the contention that the judgment is not sustained by the "clear, unequivocal, and convincing" evidence required in such cases.

Because a number of other denaturalization cases were pending in the same court, in all of which, as in this case, there was evidence that the defendants were at some time members of the German-American Bund, these cases were consolidated for trial of the common issue of the purposes and organization of the Bund, which separate trial afforded each defendant upon all other issues. This was done in the same manner as that adopted by the district court in Knauer v. United States, 328 U.S. 654, and described in the footnote at page 662, 66 S.Ct. 1304, 90 L.Ed. 1504.[1] The court then made findings and conclusions as to the Bund and separate findings and conclusions as to each defendant.

With respect to the Bund, its findings may best be summarized by stating that they conformed to the description of the Bund given by the Supreme Court in the Knauer case, as follows:[2] "The Bund taught and advocated the Nazi philosophy—the leadership principle, racial superiority of the Germans, the principle of the totalitarian state, Pan-Germanism and of Lebensraum (living space). It looked forward to the day when the Nazi form of government would supplant our form of government. It emphasized that allegiance and devotion to Hitler were superior to any obligation to the United States."[3]

Upon this issue the court's conclusions were as follows: "In carrying out the activities hereinabove described, and in seeking to accomplish its real aims and purposes, the Bund demonstrated itself to be a German militant 'fifth column' organization in the United States, antagonistic to the democratic form of government and to the Constitution and laws of the United States, un-American and subversive. One who believes in the National Socialist philosophy and form of government cannot at the same time be loyal to the United States nor attached to the principles of the Constitution and laws of the United States.

"The principles of German National Socialism are opposed in all respects to the principles of democracy and to the Constitution and laws of the United States."

As to Bechtel, the court found:

(1) He joined the Friends of New Germany (the Bund, by an earlier name),

---

[1] The same footnote refers to the opinion of the district court in this case, sub. nom. United States v. Holtz, 54 F.Supp. 63.

[2] 328 U.S. at page 661, 66 S.Ct. at page 1308.

[3] The import of the formal findings is disclosed in the opinion of the trial court, cited in note 1, supra.

about September, 1934 (seven months after he became a citizen) and attended Bund meetings thereafter through 1938 and into 1939.

(2) He subscribed for the Bund paper and read it for at least one year.

(3) During this period of membership Bechtel was on numerous occasions clothed in the uniform of the Ordnungs Dienst, or O. D. (the uniformed group within the Bund organized to act as color guards, ushers, distributors of phamphlets and literature and to protect members from attack during meetings.) He attended meetings of the O. D., where he wore its swastika arm band and assisted in its various activities such as marching and carrying the swastika banner. In 1938, at a Bund picnic, he kept watch over the fire while a large swastika was burned on the hillside.

(4) At numerous meetings of these organizations he engaged in giving the "Heil" or "Sieg Heil" salute and in the singing of the "Horst Wessel" song.

(5) He accompanied the Bund leaders and others when they organized a Bund unit in another county.

(6) In May, 1938, Bechtel attended the Bund's Western District Convention where the district leader and Fritz Kuhn, national leader, spoke.

(7) Between 1934 and 1939 Bechtel stated to various persons that he approved of Hitler's economic and social policies in Germany, and approved of his treatment of the Jews.

(8) He stated to various persons that he desired and intended to return to Germany.

(9) On December 14, 1942, he stated before a Board of Army officers that he honored the swastika flag equally with the American flag.

(10) About 1939, he burned his Bund uniform, knowing that two Bund leaders had burned theirs.

(11) On his tenth wedding anniversary Bechtel gave a party at his home at which time he displayed a swastika flag on the ceiling.

(12) He ceased attending meetings of the Bund because of personal disagreements with Hein, the local leader, and not because of any disapproval of the Bund's policies.

The foregoing findings are, with one exception,[4] amply supported by the evidence. The court proceeded to make additional findings, not based upon any direct evidence, but which the court must have arrived at by way of conclusion or inference from the evidence upon which the other findings are based. These additional findings were:

(a) Bechtel knew and understood the leadership principle as enunciated and subscribed to by the leaders and members of the Bund.

(b) At the time of his naturalization, and at all times subsequently, his allegiance has been to Germany rather than to the United States, and his attachment has been to National Socialism rather than to the principles of the United States Constitution.

(c) Bechtel knew the character and connections of the Bund and was in sympathy and agreement with them.

(d) His oaths and statements in his pe-

---

[4] With reference to item (9) above, it appears that Bechtel, while being examined in 1942 by army officers acting as an exclusion board making inquiry with respect to his former membership in the Bund, explained that he knew little about the Bund when he joined and thought it was a patriotic organization. He said: "It was presented to me that way and we honored the flags, the American flag and the German flag equally, and the only way it was, I know they wouldn't admit Communists, and that is the only thing I know."

When questioned about this statement Bechtel explained that he meant that each flag was honored in its "proper place". The very brief extract of his statement to the army officers which is in the record indicates he may have meant no more than to point out that the German flag was never displayed alone, but always with the American flag. In any event, since he was merely narrating past events in the Bund, which he had since quit, we think it incorrect to say that in 1942 Bechtel stated that "he honored the swastika flag equally with the American flag."

tition for naturalization; and his oath of allegiance, were then and there false, fraudulent and illegal.[5]

■ There are other aspects of the case, not mentioned in the findings, which we must consider if we are to re-examine the facts, as it is our duty to do. In a case of this kind we are not bound by the trial court's findings even although they may not be "clearly erroneous". Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. As stated in Knauer v. United States, 328 U.S. 654, 657, 66 S.Ct. 1304, 1307, we must "reexamine the facts to determine whether the United States has carried its burden of proving by 'clear, unequivocal, and convincing' evidence, which does not leave 'the issue in doubt;' that the citizen who is sought to be restored to the status of an alien obtained his naturalization certificate illegally."

Outstanding is the fact that there is no evidence whatever of Bechtel's views or opinions prior to the time he joined the Friends of New Germany, some seven months after he took the oath of allegiance. The dangers of reliance upon such retrospective proof of lack of allegiance at an earlier date were stated in Baumgartner v. United States, 322 U.S. 665, at page 675, 64 S.Ct. 1240, 88 L.Ed. 1525, and in Knauer v. United States, supra, 328 U.S. 654, at page 660, 66 S.Ct. 1304, 90 L.Ed. 1504.

Whether Bechtel's later membership and activity in the Bund sufficiently evidenced a state of mind at the time his naturalization certificate was issued which was incompatible with his oath and representations of attachment to the United States Constitution depends in part upon the circumstances and conditions of his membership. His enthusiastic participation in the pro-German nonsense of the Bund is clear enough. No doubt he wore his O. D. uniform with much pride, and shouted "Heil" and "Sieg Heil" as loudly as any of them. There is solid evidence of his admiration for Hitler, and for Hitler's economic and social program, including his treatment of the Jews.

But the doubts which now assail us arise from our question whether all this evidenced a prior lack of sincerity when he took his oath, or whether the true inference is that Bechtel, apparently by nature a "joiner" (he had belonged to the Sons of Hermann and the Redmen) had newly found another order, attended by fellow Germans, where the marching, the "heiling", the uniform, and the laudation of the Fatherland, appealed to some latent love of regimentation and which he accepted without any real appreciation of its inconsistency with American loyalty. Many a native-born American would have to plead guilty to wearing uniforms, participating in parades, and reciting strange and weird language under the guise of lodge ritual. If, as has been said, membership in the Bund is not in itself sufficient to convict Bechtel,[6] the fact that he participated in

---

[5] The court's finding of fact XVI recites: "That the sworn oaths and statements of the defendant in his Petition for Naturalization and in his oath of allegiance at the date of naturalization, as set forth in the complaint were then and there false, fraudulent, and illegal in that the defendant, at the time of taking said oaths, did not in fact absolutely and entirely renounce and adjure all allegiance and fidelity to Germany and the German Reich, but in fact intended to and did secretly reserve and retain allegiance and fidelity to Germany and the German Reich; nor did the defendant then and there intend to support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic, but in fact the said defendant then and there secretly reserved his intention not to support and defend the Constitution and laws of the United States against Germany and the German Reich should they become enemies of the United States of America; nor did the defendant at the time of taking said oaths intend to bear true faith and allegiance to the United States of America, but in fact secretly reserved and retained his intention not to bear true faith and allegiance to the United States of America. That by taking said oaths falsely, with the secret mental reservations and intentions as aforesaid, the defendant deceived the United States, its officers and agents, and the said Naturalization Court at the date of admission to citizenship in order that said defendant might obtain the rights, privileges, and protection of citizenship in the United States of America."

[6] Knauer v. United States, 328 U.S. 654, at page 669, 66 S.Ct. 1304, 90 L.Ed. 1504.

the actions which were apparently a part of the Bund ritual, performed by the members generally, does not add much to the mere fact of membership.

The situation here differs from that found in the Knauer case, supra. Bechtel was no dominant figure. He had little education. His formal education ended with grammar school. By occupation he was a gardener. Notwithstanding his years of membership in the Bund, he never became an officer, and his only distinction appears to have been as a watcher over a fire at a Bund picnic. Although he wore the O. D. uniform frequently, there is no evidence that he did anything but ushering and janitor service when so garbed.

Such a person may well have been as unsophisticated as Bechtel's own testimony makes him out. He said that he joined the Friends of New Germany about September, 1934, at a time when his wife was absent on a visit. This, he stated was on the invitation of Hein, the local leader. He testified that the Judge who had admitted him to citizenship had warned him against communism, and that he had believed that this organization, predecessor of the Bund, was a patriotic order devoted to fighting communism, and promoting more friendly relations with Germany. Some circumstantial corroboration of this appears in the record of the consolidated hearing as to the Bund where a number of witnesses for the Government testified that they had joined the Bund with similar misunderstandings. If, as the court found, the constitution of the Bund was "false and misleading and designed to blind the American public to the true aims and purposes of the organization", it is easy to understand how many of the ignorant rank and file like Bechtel may have been misled, and how Bechtel's natural pride in the land of his nativity made him a ready dupe for those who were promoting the Bund.

Bechtel vigorously denied that he had any knowledge of the Nazi "leadership principle". He said that until years later he did not know the meaning of the word Aryan. He never read "Mein Kampf". He testified that he quit the Bund, about the first week in 1939, not merely because of personal "fights" with Hein, but because Hein was trying to run the Bund "like a dictator". Only when he heard the pre-trial evidence in this case, did he realize that the Bund leaders were "crooked".

All this was Bechtel's own story, which by reason of his self-interest, must be properly discounted. It can be disregarded as evidence, but it yet suggests a doubt. Fitting into this pattern of a deluded ignoramus with a loose tongue is the fact that in 1938, while his Bund activities were at their height, Bechtel wrote for an essay contest an article on the American Constitution which has every evidence of sincerity, and which, if sincere, would go far toward demonstrating his loyalty.

A number of Bechtel's former employers came forward as character witnesses for him, and generally testified that although they had often discussed public affairs with him, they never heard him indicate any disloyalty. One who thus testified was Chief Justice Phil S. Gibson of the Supreme Court of California. Bechtel had been his gardner in the period following 1939, at a time when Bechtel had quit the Bund. The witness had worked in the garden himself, with Bechtel, and had many discussions with him. Bechtel had often expressed pride in his American citizenship. With respect to conditions in Germany the testimony was: "I remember that I asked him with reference to his service in the German army, if he had served in the army in Germany, and I asked him with reference to conditions in Germany immediately following the close of the last war, and out of questions that I asked him in a general discussion of conditions, he stated to me that originally he had been very hopeful that Hitler and his followers would do something for the poor people in Germany, and that he thought they would also represent the common people of Germany as against the military clique, and also he thought that they were opposing the spread of Communism into Germany; but since the treaty between Germany and Russia he had become very much disillusioned and he had decided they were a bad lot."

A Mrs. Young, wife of a retired wholesale grocer, who had employed Bechtel as gardner for the past ten years, testified on his behalf. Bechtel had shown her his essay on the Constitution and discussed it with her. She thought he was very sincere in what he wrote. It appeared that this same witness, in May, 1941, had gone to the FBI and reported that Bechtel had been talking too much about Hitler, saying he endorsed Hitler's program against communists, and had been talking about Hitler's anti-Jewish program and his routing of communists in Germany. The witness explained that when she made this report she did it to protect Bechtel, that she had great confidence in him, wanted to protect him from himself, and felt he was talking too much about communism and communistic Jews, and was fearful he might get into some difficulty.

The evidence of Mrs. Young would indicate that even his friends considered him a reckless blatherskite, and that he continued his anti-Semitic tirades even after he left the Bund. Such evidence has a tendency to persuade us of his general lack of judgment, rather than of a fraudulent and false oath in February, 1934. As said in the Baumgartner case, supra, [322 U.S. 665, 64 S.Ct. 1245], his new American citizenship gave him "the freedom to speak foolishly and without moderation", and to express "silly or even sinister-sounding views which native-born citizens utter with impunity." That he undertook to claim this freedom and to act in that way is as readily attributable to his ignorance as to a calculated and conscious disloyalty.

■ Upon consideration of the whole record we are of the opinion that the judgment of the district court is not sustained by that "clear, unequivocal, and convincing" evidence which the decisions of the Supreme Court have required in such cases.[7] In our view, the evidence leaves "the issue in doubt" as to whether Bechtel ever had any real understanding of the

purposes of the Bund, or appreciated that his conduct or utterances were incompatible with loyalty to this country. With such a doubt as to his mental processes it appears to us that we cannot fairly charge such later acts and utterances against his earlier state of mind when he took the oath of allegiance. We therefore hold that the Government has not made the required showing that Bechtel "consciously withheld allegiance to the United States and its Constitution and laws" when he was naturalized.

The judgment is reversed.

---

7 In Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 389, two of the opinions suggest that the standard of proof required in cases of this character is substantially the same as proof "beyond a reasonable doubt." It is proper to state that when this case was decided, the able trial judge did not then have, as do we, the aid of the decision in the Baumgartner case.