**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILSONIS AYALA-VILLANUEVA,
                    *Petitioner,*

            v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 07-70110

Agency No.
A037-300-465

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 11, 2009*
San Francisco, California

Filed July 14, 2009

Before: Procter Hug, Jr., Betty B. Fletcher and Michael
Daly Hawkins, Circuit Judges.

Opinion by Judge Hug

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Leon Rosen, Law Office of Leon Rosen, Las Vegas, Nevada, for the petitioner.

Richard Zanfardino, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, District of Columbia, for the respondent.

---

**OPINION**

HUG, Circuit Judge:

Wilsonis Ayala-Villanueva ("Ayala") petitions this court for review of a final order of removal. Removal proceedings were initiated on March 7, 2003, when the Department of Homeland Security ("DHS")[1] issued and served on Ayala a notice to appear, charging him with removal as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(G) (theft offense) based on his conviction for possession of stolen property in violation of Nevada Revised Statutes § 205.275. Ayala claims that he is a derivative citizen and is therefore not removable.[2] On three occasions, the Immigration Judge ("IJ") terminated the removal proceedings, concluding that Ayala had presented substantial, credible evidence of his citizenship and that the government had failed to prove deportability by clear and convincing evidence. Each time the IJ terminated removal proceedings, the DHS appealed to the Board of Immigration Appeals ("BIA"). The

---

[1]Effective March 1, 2003, the Immigration and Naturalization Service ceased to exist and its functions were transferred to the DHS. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

[2]Ayala filed a N-600 Application for Certificate of Citizenship on May 15, 2003. The DHS denied his application on July 25, 2003.

BIA sustained each DHS appeal and thrice remanded the matter to the IJ.

In her first order, filed December 5, 2003, the IJ concluded that Ayala had presented sufficient evidence of his derivative citizenship. The BIA, however, held that the IJ's citizenship hearing was insufficient because it was conducted without prior notice to the parties and involved only limited testimony from Ayala. On remand, the IJ held extensive hearings and allowed the parties to substantially develop the evidentiary record. In her carefully drafted order of October 18, 2005, the IJ extensively reviewed the documentary evidence and testimony concerning Ayala's citizenship. Concluding that Ayala had presented substantial credible evidence in support of his citizenship claim and that the government had failed to carry its ultimate burden of proving deportability by clear and convincing evidence,[3] the IJ ordered the proceedings terminated. The BIA again sustained the government's appeal, concluding that the IJ's reliance on Ayala's "newly discovered" birth certificate was "clearly erroneous" and that Ayala had failed to rebut the presumption of alienage by substantial credible evidence.

In her third order terminating proceedings, the IJ expanded her analysis of the facts and law and suggested that the government's evidence supporting alienage had been discredited by Ayala. Because no new evidence had been submitted on remand, the BIA sustained the government's third appeal, saying that the IJ had "no basis to again terminate the pro-

---

[3]In a removal proceeding, the DHS bears the burden of establishing by clear, unequivocal, and convincing evidence, all facts supporting deportability. *Chau v. INS*, 247 F.3d 1026, 1029 n.5 (9th Cir. 2001) (citing *Murphy v. INS*, 54 F.3d 605, 609-610 (9th Cir. 1995)). Evidence of foreign birth gives rise to a rebuttable presumption of alienage, shifting the burden to the alleged citizen to prove citizenship. *Id.* Upon his production of substantial credible evidence in support of his citizenship claim, the presumption of alienage is rebutted. *Id.* The DHS then bears the ultimate burden of proving the respondent removable by clear and convincing evidence. *Id.*

ceedings." The BIA instructed the IJ that, on remand, she "should not reinstate her prior order and not terminate the proceedings, unless new and substantial evidence is provided which is sufficient to rebut the presumption of alienage in this case." The IJ, "feel[ing] that [she could] do nothing else but comply" with the BIA's order, found that Ayala is a native and citizen of El Salvador and that, because he was convicted of an aggravated felony, he is removable. Accordingly, the IJ ordered Ayala removed to El Salvador. The BIA dismissed Ayala's appeal, and Ayala now petitions this court for relief.

**[1]** This court has jurisdiction to consider Ayala's nationality claim pursuant to 8 U.S.C. § 1252(b)(5). If the "record presents no genuine issue of material fact about the petitioner's nationality, a reviewing court must decide the nationality claim." *Chau v. INS*, 247 F.3d 1026, 1029 (9th Cir. 2001) (citing 8 U.S.C. § 1252(b)(5)(A)). If, however, "the record presents a genuine issue of material fact as to the petitioner's nationality, the reviewing court must transfer the proceeding to a district court for a *de novo* determination." *Id.* (citing 8 U.S.C. § 1252(b)(5)(B)).[4] Traditional summary judgment rules guide our decision concerning transfer. *Id.* Where "the evidence presented in support of the claim would be sufficient to entitle a litigant to trial were such evidence presented in opposition to a motion for summary judgment," transfer for a *de novo* determination of the citizenship claim is statutorily mandated. *Id.*

Ayala was born out of wedlock in El Salvador on July 28, 1973. On October 23, 1982, when Ayala was nine years old, he was admitted to the United States as a lawful permanent

---

[4]Section 1252(b)(5)(B) provides as follows: "If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28."

resident. Ayala claims that he became a derivative citizen through his mother, Maria Dolores Villanueva ("Villanueva"), when she naturalized on February 19, 1987. "[D]erivative citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred." *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005). Former section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (repealed 2000), which was in effect at the time of Villanueva's naturalization, governs Ayala's claim to citizenship. The statute provides, in pertinent part, that:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> . . .
>
> (3) The . . . naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of . . . the parent naturalized under clause . . . (3) of this subsection . . . .

8 U.S.C. § 1432(a). It is uncontested that Ayala meets conditions (4) and (5); he was 13 years old and living in the United States as a legal permanent resident when his mother naturalized. His derivative citizenship thus turns on whether he meets condition (3).

Before these proceedings, Ayala had assumed that his

mother's husband, Jose Humberto Ayala Gaitan ("Humberto"),[5] was his father and that his mother and Humberto were married at the time of his birth. Villanueva and Humberto, however, were not married until July 28, 1976, and each birth certificate included in the administrative record shows that Ayala was born out of wedlock. Therefore, Ayala is a derivative citizen if his "paternity . . . has not been established by legitimation." *See* 8 U.S.C. § 1432(a)(3). Humberto's marriage to Villanueva establishes Ayala's paternity by legitimation and destroys Ayala's claim to citizenship only if Humberto is Ayala's father. If, however, Humberto is not Ayala's father, Ayala's paternity was never established by legitimation and he is a derivative citizen.

The administrative record contains four documents purporting to be copies and translations of Ayala's birth certificate. The two birth certificates obtained by Ayala and entered into the administrative record as exhibits 9 and 12 indicate that Ayala's father is not Humberto. According to these documents, Ayala was born to Jose Tiburcio Ayala Gaitan ("Tiburcio"), who was a 21-year-old student at the time of Ayala's birth. The birth record number shown on these certificates is 686 and the place of birth is given as Hospital San Pedro of Usulutan. The government offered two birth certificates, exhibits 11 and 13, which indicate that Humberto is Ayala's father. Humberto is identified as a 26-year-old small agriculturalist. These two documents give Canton of San Antonio in Concepcion Batres as the place of Ayala's birth and indicate a birth record number of 386. Despite these differences, all four birth certificates bear marked similarities. They are consistent with regard to the date and time of Ayala's birth and the identity and description of his mother. Each certificate also describes Ayala's father as being from Estanzualas and having the Personal Cedula Identification number 519653. Lastly, all of the birth certificates indicate that they are found on page 349 in the book of births.

_____

[5]Humberto is a native and citizen of El Salvador.

The record also includes a certified letter from Marcia Iraida Martinez Rivera ("Martinez"), Head of Family Registry for Concepcion Batres, dated July 25, 2003. Both copies of the birth certificate identifying Humberto as Ayala's father indicate they are from the book of births for Concepcion Batres and bear the certificate number 386. Martinez certified, however, that the birth certificate identified as exhibit 13 does not exist in the book of births for Concepcion Batres. She further represented that certificate number 386 for the year 1973 actually belongs to Rene Armando Perdomo and is found on page 198 of the book of births.

The government submitted a request for overseas investigation to the officer in San Salvador, but the record does not contain any results from that investigation. The DHS attorney represented to the IJ that the original certificate identifying Humberto as Ayala's father was destroyed in a fire. There is no evidence in the record supporting this assertion. The IJ contrasted this representation with Martinez's certification that another name is listed at certificate 386 in the book of births for Concepcion Batres in 1973 and suggested that Ayala's evidence discredited the government's birth certificate.

The government argues that Ayala's evidence is insufficient to rebut the presumption of alienage. This court, however, need not weigh the evidence or determine whether the BIA applied the appropriate burden. Instead, we need only determine whether a genuine issue of material fact exists as to Ayala's nationality. If such a dispute exists, we must transfer the proceedings to the district court. 8 U.S.C. § 1252(b)(5)(B). In the absence of a genuine issue of material fact, we must decide the nationality claim. § 1252(b)(5)(A).

As the foregoing discussion makes clear, the evidence as to Ayala's paternity is heavily disputed. The administrative record contains various versions of two conflicting records of Ayala's birth: one identifies Jose Humberto Ayala Gaitan, a

26-year-old agriculturalist, as Ayala's father; and the other names Jose Tiburcio Ayala Gaitan, a 21-year-old student, as his father. The legitimacy of the birth certificates relied on by the government are called into question by Martinez's certification that the birth certificate listing Humberto as the father "does not exist in the book of births for the year of 1973" and that there is also no such certificate in the birth records for the years 1974 and 1975.

**[2]** Based on the foregoing, we find that there is a genuine factual dispute concerning the identity of Ayala's father and that the resolution of this factual dispute will determine whether or not Ayala acquired derivative citizenship. Accordingly, we transfer the proceedings to the United States District Court for the District of Nevada "for a new hearing on [his] nationality claim and a decision on that claim as if an action had been brought" for declaratory relief under 28 U.S.C. § 2201. 8 U.S.C. § 1252(b)(5)(B); *see Chau*, 247 F.3d at 1032. We do not reach the remaining issues raised in Ayala's petition for review at this time and hold the petition in abeyance pending a judicial determination of Ayala's citizenship claim. *Chau*, 247 F.3d at 1032.

**MATTER TRANSFERRED TO DISTRICT COURT OF NEVADA; PETITION FOR REVIEW HELD IN ABEYANCE.**