Opinion by Judge GRABER; Dissent by Judge PREGERSON.
OPINION
GRABER, Circuit Judge:
Who is Petitioner? Is he Reynaldo Car-Ion Mondaca, a native and citizen of the United States, or is he Salvador Mondaca-Vega, a native and citizen of Mexico? The district court determined that Petitioner is Salvador Mondaca-Vega and, accordingly, that he is not a United States citizen. Reviewing the district court’s findings for clear error and finding none, we now deny the petition for review.
FACTUAL AND PROCEDURAL BACKGROUND
We first reviewed Petitioner’s final order of removal in 2003. In considering his claim of citizenship,[1] we noted genuine issues of fact. Therefore, pursuant to 8 U.S.C. § 1105a(a)(5) — which now appears with only minimal modifications at 8 U.S.C. § 1252(b)(5) — we transferred the matter to the United States District Court for the Eastern District of Washington to resolve Petitioner’s.claim of United States citizenship. Mondaca-Vega v. Ashcroft, 104 Fed.Appx. 627 (9th Cir.2004) (unpublished).
The district court held a bench trial, after which it made extensive findings of fact. As the case reaches us, these relevant underlying facts are undisputed:
On June 3, 1931, Salvador Mondaca-Vega was born to Felix Mondaca and Josefa Vega in Mahone, Mexico. Salvador’s birth was registered in El Fuerte, Sinaloa, Mexico, later that month.
On July 17, 1931, Renoldo Mondaca was born to Marin Mondaca and Antonia Car-Ion in Imperial, California.
Both birth certificates are in evidence, and both are genuine.
No matter where he was born, Petitioner grew up in El Fuerte, Sinaloa, Mexico. He traveled from Mexico to the United States when he was about 20 years old, or in about 1951.
In 1952, a person claiming to be Salvador Mondaca applied for a Social Security card. The applicant listed Feliz Mondaca as his father and Josefa Vega as his mother and gave a birth date of April 13, 1931. His application was rejected because he failed to establish United States citizenship.
*1077 On May 11, 1958, a person named Salvador Mondaca-Vega was served with a warrant by the Immigration and Naturalization Service (“INS”) while detained in the King County, Washington, jail. On May 19, the person who had been served with the warrant was fingerprinted; the prints are Petitioner’s.
On May 22, 1953, Petitioner was deported from the United States under the name Salvador Mondaca-Vega.
On May 28, 1953, someone applied for a Social Security card in Calexico, California, under the name Reynaldo C. Mondaca. Handwriting analysis suggests, but does not firmly establish, that it was Petitioner who signed the application. The Social Security Administration issued a Social Security card to Petitioner under the name Reynaldo C. Mondaca. He has consistently used that Social Security number ever since.
Nonetheless, he continued to use the name Salvador Mondaca-Vega even after receiving the Social Security card in 1953. On September 15, 1954, for example, the INS issued a warrant for the detention of Petitioner, who was being held by the Yakima County, Washington, sheriff, under the name Salvador Mondaca-Vega. While in custody, Salvador Mondaca-Vega was fingerprinted. The fingerprints taken on that occasion are Petitioner’s.
On September 20, 1954, Petitioner gave a sworn, signed statement to an INS official in Seattle. Therein he averred that his name is Salvador Mondaca-Vega, that he was born on “April 16, 1931, at El Puerte [sic], Sin., Mexico,” and that he was a citizen of Mexico. He also stated that he had never been lawfully admitted to the United States for any purpose and that he had entered the United States “several times since about 1949.” He admitted to having been “apprehended in California a number of times and granted voluntary departures to Mexico.” He also agreed that he had been deported once on May 22, 1953. On September 20, 1954, Petitioner was again granted voluntary removal to Mexico under the name Salvador Monda-ea-Vega.
In 1959, Petitioner began a relationship with the woman whom he eventually married. They had nine children together, of whom the first six were born in Mexico. The children’s baptismal and birth records that are in evidence show the father’s name as Reynaldo Mondaca.
On January 11, 1966, Petitioner was deported under yet another name, Jose Valdez-Vega. In 1969, he was referred to on his FBI Rap Sheet as Salvador Vega-Mondaca. At some point, he appears to have stopped using the name Salvador Mondaca-Vega altogether.
In the 1970s, Petitioner obtained certificates of citizenship for four of his children, supported by an affidavit under the name Reynaldo Mondaca. He also filed a relative immigrant visa petition on behalf of his wife and two of his children, again under the name Reynaldo Mondaca. The petition was approved, and the INS adjusted the status of the wife and one of his children to that of lawful permanent resident.
On April 27, 1998, the Secretary of State issued a United States passport to Petitioner under the name Reynaldo Carlon Mondaca. Petitioner lost the passport and obtained a replacement in 2005; but his passport was revoked in 2011.
Petitioner gave no explanation for why he used the name “Salvador Mondaca-Vega” or why he continued to do so after obtaining a social security card under the name “Reynaldo Mondaca.” Nor did he provide any explanation for why he stopped using the name “Salvador Monda-ca-Vega” and started using a different name.
*1078 After the bench trial, the district court ruled that Petitioner had carried his initial burden of proving citizenship by a preponderance of the evidence, because the INS had determined that his wife and foreign-born children were entitled to derivative adjustment of status and citizenship through him and because the Secretary of State had issued him a passport. Then the court shifted the burden to the government to rebut Petitioner’s claim of citizenship by “clear and convincing” evidence that the foregoing determinations of citizenship were a product of fraud or error. The court concluded that the government had carried its heavy burden because, among other reasons, it was “highly probable” that Petitioner’s 1954 sworn and signed statement was truthful. Accordingly, the district court ruled that Petitioner is not a United States citizen.
After the district court resolved the citizenship claim, we issued an order to show cause why we “should not adopt the district court’s findings and conclusions and deny the petition for review.” Mondaca-Vega v. Holder, No. 03-71369, 718 F.3d 1075, 2013 WL 1760795 (9th Cir. Aug. 25, 2011) (order). Petitioner timely filed a showcause brief to challenge the district court’s decision.
STANDARD OF APPELLATE REVIEW
At the outset, the parties dispute the standard of review that we should apply to the district court’s findings of fact. Classic findings of fact lie at the heart of this case: Where was Petitioner born? Which birth certificate is his? Is his testimony credible? A legal consequence — United States citizenship — depends on the answer to those questions, but the law is not in doubt;, only the facts are.
The government contends that Federal Rule of Civil Procedure 52(a)(6) prohibits us from setting aside a district court’s finding of fact unless it is clearly erroneous. Petitioner counters that we should, instead, follow Lim v. Mitchell, 431 F.2d 197 (9th Cir.1970), and review de novo the factual findings relating to his citizenship claim. Interpretation of the Federal Rules of Civil Procedure is a question of law, Jenkins v. Whittaker Corp., 785 F.2d 720, 736 (9th Cir.1986), with respect to which we must follow circuit precedent unless it is inconsistent with intervening decisions of the Supreme Court or of this court sitting en banc, Miller v. Gammie, 335 F.3d 889, 899-900 (9th Cir.2003) (en banc). For the reasons that we will explain, Lim no longer is good law, and we must review the district court’s findings of fact for clear error.
Lim involved an application for a certificate of citizenship. We wrote that, in such a case, we “must make an independent determination as to whether the evidence introduced by” the government sufficed to satisfy its burden of proof, and we undertook to “re-examine the facts.” Lim, 431 F.2d at 199, 200 n. 4; see also United States v. Delmendo, 503 F.2d 98, 100 n. 2 (9th Cir.1974) (“In reviewing denaturalization based on claims that naturalization was illegally or fraudulently obtained, we are not bound by the district court’s findings even if they are not clearly erroneous.” (citing Bechtel v. United States, 176 F.2d 741, 744 (9th Cir.1949))).
Both Lim and Bechtel relied on Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946). There, the Supreme Court had held, in the context of a denaturalization proceeding, that the reviewing court “reexamine[s] the facts to determine whether the United States has carried its burden of proving ... that the citizen who is sought to be restored to the status of an alien obtained his naturalization certificate illegally.” Id. at 657-58, 66 S.Ct. 1304. Knauer, in turn, relied on *1079 Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944). In that case, the Court had held that, because “[flinding so-called ultimate ‘facts’ more clearly implies the application of standards of law[,] ... the conclusion that may appropriately be drawn from the whole mass of evidence is not always the ascertainment of the kind of ‘fact’ that precludes consideration by this Court.” Id. at 671, 66 S.Ct. 1304.[2] The Supreme Court has since cabined much of the core of Baumgartner:
[T]his Court has on occasion itself indicated that findings on “ultimate facts” are independently reviewable. In Baumgartner v. United States, 322 U.S. 665 [64 S.Ct. 1240, 88 L.Ed. 1525] (1944), the issue was whether or not the findings of the two lower courts satisfied the clear-and-convineing standard of proof necessary to sustain a denaturalization decree. The Court held that the conclusion of the two lower courts that the exacting standard of proof had been satisfied was not an unreviewable finding of fact but one that a reviewing court could independently assess. The Court referred to the finding as one of “ultimate” fact, which in that case involved an appraisal of the strength of the entire body of evidence. The Court said that the significance of the clear-and-convincing proof standard “would be lost” if the ascertainment by the lower courts whether that exacting standard of proof had been satisfied on the whole record were to be deemed a “fact” of the same order as all other “facts not open to review here.” Id. at 671 [64 S.Ct. 1240].
Whatever Baumgartner may have meant by its discussion of “ultimate facts,” it surely did not mean that whenever the result in a case turns on a factual finding, an appellate court need not remain within the constraints of Rule 52(a). Baumgartner’s discussion of “ultimate facts” referred not to pure findings of fact — as we find discriminatory intent to be in this context — but to findings that “clearly [imply] the application of standards of law.” [/<£]
Pullman-Standard v. Swint, 456 U.S. 273, 286 n. 16, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (emphasis added) (alteration in original).
And the Supreme Court has rejected Baumgartner's remaining reasoning. Baumgartner stated:
[A] “finding of fact” may be the ultimate judgment on a mass of details involving not merely an assessment of the trustworthiness of witnesses but other appropriate inferences that may be drawn from living testimony which elude print. The conclusiveness of a “finding of fact” depends on the nature of the materials on which the finding is based.
322 U.S. at 670-71, 64 S.Ct. 1240 (emphasis added). But in Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Court held that the clearly erroneous standard applies
even when the district court’s findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts. To be sure, various Courts of Appeals have on occasion as *1080 serted the theory that an appellate court may exercise de novo review over findings not based on credibility determinations. This theory has an impressive genealogy, having first been articulated in an opinion written by Judge Frank and subscribed to by Judge Augustus Hand, but it is impossible to trace the theory’s lineage back to the text of Rule 52(a), which states straight-forwardly that “findings of fact shall not be set aside unless clearly erroneous.” That the Rule goes on to emphasize the special deference to be paid credibility determinations does not alter its clear command: Rule 52(a) “does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court’s findings unless clearly erroneous.”
Id. at 574, 105 S.Ct. 1504 (citations omitted) (quoting Pullman-Standard, 456 U.S. at 287, 102 S.Ct. 1781).
The dissent correctly notes that an echo of Baumgartner[1] s reasoning can be heard in the Supreme Court’s decisions regarding review of facts in the First Amendment context. In Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 514, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), the Supreme Court held that “the clearly-erroneous standard of [Rule 52(a) ] does not prescribe the standard of review to be applied in reviewing a determination of actual malice in a case governed by [New York Times Co. v. Sullivan, 376 U.S. 254, 271, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ].” Even there, though, the court limited its exception to Rule 52(a)’s general standard to the unique, substantive principle of First Amendment law that was at issue in that case. See Bose Corp., 466 U.S. at 514 n. 31, 104 S.Ct. 1949 (noting that there are “many findings of fact in a defamation case that are irrelevant to the constitutional standard ... to which the clearly-erroneous standard of Rule 52(a) is fully applicable”). The Supreme Court has given us no reason to extend Bose Corp.’s narrow holding to this unrelated context.
In short, Lim and its progeny relied on implications drawn from Knauer and Baumgartner that the Supreme Court subsequently repudiated in Pullman-Standard and Anderson. Because Lim is clearly irreconcilable with Pullman-Standard and Anderson, it has been effectively overruled. See Miller, 335 F.3d at 900 (“[IJssues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.... In future cases of such clear irreconcilability, a three judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.”).
Having concluded that Lim does not compel de novo review, we next must decide what standard does apply. The district court held a bench trial pursuant to 8 U.S.C. § 1252(b)(5)(B), which provides for trial of a nationality claim by the district court, “as if an action had been brought in the district court under [the Declaratory Judgment Act].” Rule 52(a) unambiguously requires that, in an action thus tried by the court instead of a jury, the court “find the facts specially” and that, on review, those factual findings be set aside only if “clearly erroneous.” Fed. R.Civ.P. 52(a)(1), (6). The Supreme Court’s decisions in Pullman-Standard and Anderson make clear that there is no exception to that rule merely because the facts found are determinative of Petitioner’s ultimate claim. Nor have we found any other applicable exception to Rule 52(a)’s general requirement that we review *1081 a court’s findings of fact in a civil case for clear error. Accordingly, review for clear error is required. See, e.g., Republic W. Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman, 68 F.3d 347, 350 (9th Cir.1995) (applying “clearly erroneous” standard to review of district court’s factual findings in declaratory judgment action).[3]
Before reviewing the district court’s findings of fact under this standard, though, we consider another preliminary issue: whether the district court applied the correct burden of proof.
DISTRICT COURT’S ALLOCATION OF THE BURDEN OF PROOF[4]
Both Petitioner and the government contend that the district court erred with respect to the parties’ burdens of proof. In Ayala-Villanueva v. Holder, 572 F.3d 736 (9th Cir.2009), we set forth a burden-shifting framework for removal proceedings:
[T]he DHS [Department of Homeland Security] bears the burden of establishing by clear, unequivocal, and convincing evidence, all facts supporting deportability. Evidence of foreign birth gives rise to a rebuttable presumption of alienage, shifting the burden to the alleged citizen to prove citizenship. Upon his production of substantial credible evidence in support of his citizenship claim, the presumption of alienage is rebutted. The DHS then bears the ultimate burden of proving the respondent removable by clear and convincing evidence.
Id. at 737 n. 3 (citations omitted).
The government first argues that the district court failed to place the burden on Petitioner to prove his citizenship by a preponderance of the evidence before shifting the burden of proof to the government. We are not persuaded that the district court erred.
The court properly looked first to Petitioner’s evidence of citizenship. In addition to introducing a passport, Petitioner produced a genuine United States birth certificate and presented corroborating testimony from family members to support his averment that he is the person identified on that birth certificate. That information constituted “substantial credible evidence in support of [Petitioner’s] citizenship claim” and was therefore sufficient under Ayalar-Villanueva. Id. Any presumption of alienage was thereby rebutted, and the government then bore the “ultimate burden” of proving that Petitioner was removable. Id.
Next, Petitioner contends that the district court erred in requiring the government to prove alienage only by “clear and convincing” evidence instead of “clear, unequivocal, and convincing” evidence. (Emphasis added.) According to Petitioner, the term “unequivocal” raises the government’s burden to something higher than the elear-and-convincing standard — perhaps equal to or even higher than the level of proof “beyond a reasonable doubt” that *1082 is required to support a criminal conviction. We reject Petitioner’s argument and hold that the two formulations of the government’s burden of proof in removal proceedings are indistinguishable.
It is true, as Petitioner points out, that in at least two cases we have articulated the government’s burden for disproving citizenship as “clear, unequivocal, and convincing” evidence, without expressly equating that formulation to the more common “clear and convincing” standard. Lim, 431 F.2d at 199; Lee Hon Lung v. Dulles, 261 F.2d 719, 723-24 (9th Cir.1958) (equating the stated standard of proof with the “rule which obtains in denaturalization cases” (citing Schneiderman v. United States, 320 U.S. 118, 123, 125, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943))). In many cases, though, we have used the two phrases interchangeably to describe a single standard. See, e.g., United States v. Arango, 670 F.3d 988, 992 (9th Cir.2012) (using the two formulations interchangeably); Ayala-Villanueva, 572 F.3d at 737 n. 3 (same); Lopez-Chavez v. INS, 259 F.3d 1176, 1180-81 (9th Cir.2001) (same); Friend v. Reno, 172 F.3d 638, 646 (9th Cir.1999) (describing Schneiderman as setting forth a “clear and convincing” standard); Murphy v. INS, 54 F.3d 605, 608-10 (9th Cir.1995) (using the two formulations interchangeably and explaining the standard by quoting Modern Federal Jury Instructions, Model Civil Jury Instructions for the Ninth Circuit § 5.02, 9-27 (Ninth Circuit Jury Committee 1993)). Indeed, we have found no post-Anderson case in which we differentiated “clear and convincing” from “clear, unequivocal, and convincing.”
Petitioner contends that the Supreme Court differentiated the two standards in Addington v. Texas, 441 U.S. 418, 432, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), and that the term “unequivocal” heightens the burden of proof. We do not read Addington to require the government to meet a unique burden of proof in citizenship matters.
In Addington, the Court considered the standard of proof required under the Due Process Clause of the Fourteenth Amendment to support an individual’s involuntary and indefinite civil commitment for mental illness. Id. at 419-20, 99 S.Ct. 1804. The trial court had instructed the jury to complete a verdict form that asked whether “clear, unequivocal and convincing evidence” supported the commitment. Id. at 421, 99 S.Ct. 1804. The Supreme Court held that due process required “clear and convincing” evidence in civil commitment proceedings and that the trial court’s “clear, unequivocal, and convincing” satisfied that minimum. Id. at 433, 99 S.Ct. 1804. The Court did not decide whether the word “unequivocal” necessarily set the standard higher than the constitutional requirement. Rather, it remanded the case to allow the state courts to determine whether, as a matter of state law, the two formulations were equivalent. Id.
In reaching its result, the Addington opinion suggested that, whatever Texas state law might require, federal law generally recognizes a “continuum” containing only “three standards or levels of proof.” Id. Specifically, it identified the “mere preponderance of the evidence” standard; the “beyond a reasonable doubt” standard; and an “intermediate standard, which usually employs some combination of the words ‘clear,’ ‘cogent,’ ‘unequivocal,’ and ‘convincing. ’ ” Id. at 423-24, 99 S.Ct. 1804 (emphases added). As one example of a case in which the intermediate standard applies, Addington cited Schneiderman, the denaturalization case. Id. at 432, 99 S.Ct. 1804. Thus, the Addington decision expressly recognized that, in citizenship cases, the necessary level of proof reflects the general intermediate standard — one that certainly falls below the “beyond a *1083 reasonable doubt” standard of proof applied in criminal prosecutions. Moreover, the Court, by resting its reasoning on the premise that three standards are generally recognized, implicitly precluded Petitioner’s argument that a semantic variation in how the intermediate standard is articulated changes its substantive requirements.
Two years later, in California ex rel. Cooper v. Mitchell Bros.’ Santa Ana Theater, 454 U.S. 90, 93, 102 S.Ct. 172, 70 L.Ed.2d 262 (1981) (per curiam), the Supreme Court again observed that “[t]hree standards of proof are generally recognized” under federal law. With respect to the intermediate standard, “[t]he precise verbal formulation ... varies, and phrases such as ‘clear and convincing,’ ‘clear, cogent, and convincing,’ and ‘clear, unequivocal, and convincing’ have all been used.” Id. at 93 n. 6, 102 S.Ct. 172. As in Addington, the Court declined to recognize any distinction among the various formulations of the intermediate standard.
Indeed, the Supreme Court itself has used the phrases “clear, unequivocal, and convincing” and “clear and convincing” interchangeably. In Baumgartner, the Court emphasized “the importance of clear, unequivocal, and convincing proof’ to permit denaturalization. 322 U.S. at 671, 64 S.Ct. 1240 (emphasis added) (internal quotation marks omitted). Yet in Anderson, the Court characterized Baumgartner as presenting the issue “whether or not the findings of the two lower courts satisfied the clear-and-convincing standard of proof necessary to sustain a denat-uralization decree.” 456 U.S. at 286 n. 16, 102 S.Ct. 1781 (emphasis added).
For those reasons, we hold that the two formulations of the government’s burden in removal proceedings that have appeared in our cases both require the same intermediate quantum of proof.[5] In sum, then, the district court did not err in shifting the burden of proof to the government, nor did it err in selecting the “clear and convincing” formulation when assigning the level of proof that the government had to meet.
DISTRICT COURT’S FINDINGS OF FACT
Finally, we turn to Petitioner’s claim that the district court erred in finding that he is Salvador Mondaca-Vega, a native and citizen of Mexico. As we have held, we review the court’s factual findings for clear error.
[A] finding is “clearly erroneous” when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed .... If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.
Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504 (internal quotation marks omitted); see also United States v. Hinkson, 585 F.3d 1247, 1261 (9th Cir.2009) (en banc) (“[T]he scope of our review limits us to *1084 determining whether the trial court reached a decision that falls within any of the permissible choices the court could have made. In other words, the Supreme Court’s precedent convinces us that any ‘definite and firm conviction’ of the reviewing court must still include some measure of deference to the trial court’s factual determinations.”). Credibility findings demand even greater deference. Anderson, 470 U.S. at 575, 105 S.Ct. 1504; see also Allen v. Iranon, 283 F.3d 1070, 1078 n. 8 (9th Cir.2002). When applying this standard of review, we necessarily incorporate an understanding of the appropriate burden of proof in the district court. See Marsellus v. Comm’r, 544 F.2d 883, 885 (5th Cir.1977) (holding that a finding of fraud may be reversed only for clear error, but that the finding must be judged in view of the “clear and convincing” burden of proof); see also MacDonald v. Kahikolu, Ltd., 581 F.3d 970, 976 (9th Cir.2009) (reviewing for clear error the district court’s finding that the evidence clearly and convincingly established a fact); EEOC v. Maricopa Cnty. Cmty. Coll. Dist., 736 F.2d 510, 513 (9th Cir.1984) (reviewing for clear error the district court’s factual conclusion that a party had sustained its burden of proving that a statutory provision applied).
That said, some of the challenged findings are not findings at all. For example, the district court opined that the most probable reason for Petitioner’s transition from using the name Salvador Mondaca-Vega to using the name Reynaldo Carlon Mondaca was his marriage, and his desire to obtain benefits that could flow to him and his family from using the name of a United States citizen. This observation is not so much a finding as it is a part of the court’s reasoning when deciding that Petitioner was not a credible witness. Nor was this observation a necessary, or even a particularly important, reason why the court disbelieved Petitioner. Petitioner does not challenge the accuracy of the other reasons that the district court gave: that Petitioner routinely used the name Salvador Mondaca-Vega throughout the 1950s and 1960s, that he began to use the name Reynaldo C. Mondaca later, that he offered no explanation whatsoever for why he stopped using one name and started using the other, and that his testimony in court was inconsistent with his earlier testimony before an immigration judge.[6]
Some of the dispute centers on how the district court chose to weigh evidence, and on which evidence it chose to address explicitly in its decision. These arguments essentially recapitulate Petitioner’s request for us to reweigh the evidence anew, which we may not do.
Some of the challenged findings are not clearly erroneous. We will discuss four examples.
1. The district court found that Petitioner accepted voluntary departure “ten to twenty times” under the name Salvador Mondaca-Vega. In support, the court cited the parties’ agreed fact: “At his 1998 immigration court hearing, Petitioner stated that he accepted voluntary departure ten to twenty times.”
Petitioner disputes the finding that linked all the departures to the name Salvador Mondaca-Vega because he accepted voluntary departure under a different name, “Jose Vega-Valdez,” at least once. We are not persuaded.
Petitioner admitted that he had accepted voluntary departure “ten to twenty times” and that he went by Salvador Mondaca-Vega during the relevant time period. Moreover, Petitioner’s fingerprints are as *1085 sociated with FBI records that document his deportation or voluntary departure on at least five separate occasions, four of which occurred under the name Salvador Mondaca-Vega. Notwithstanding a single aberration—the admitted use of an alias for one voluntary departure—the district court reasonably inferred that Petitioner did accept voluntary departure ten to twenty times under the name Salvador Mondaca-Vega. See United States v. Bucher, 375 F.3d 929, 931 (9th Cir.2004) (“[F]acts and reasonable inferences from those facts are the province of the trier of fact.”). We see no clear error.
2. Likewise, the district court did not clearly err in finding that Petitioner was deported in July 1953 under the name Salvador Mondaca-Vega. Petitioner unquestionably was detained in July 1953. It was reasonable for the court to infer that he also was deported then, in view of his admission that he was removed on several occasions under that name.
3. Similarly, we see no clear error in the district court’s adverse credibility finding with respect to Petitioner’s wife. She was unable to testify in the district court because she died before trial. For that reason, the district court relied on her 1994 sworn statement and the transcript of her 1998 testimony before the immigration judge. The district court’s adverse credibility determination rested on, among other things, inconsistencies in her initial sworn statement, which twice stated that Petitioner was born in Mexico, and a lack of intimate details in that testimony. Those grounds, which the record bears out, suffice to support the adverse credibility determination under the deferential standard of review enunciated in Rule 52(a)(6).
It is well settled that a fact-finder may rely on inconsistencies to support an adverse credibility determination. See, e.g., Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir.2010) (holding that “inconsistencies ... adequately support the [administrative law judge’s (“ALJ”) ] adverse credibility finding”); see also United States v. McCarty, 648 F.3d 820, 829 (9th Cir.2011) (observing that the district court “based its credibility determination on inconsistencies in [a witness’] testimony”). Here, the trial court identified inconsistencies that were particularly significant because they involved the very fact at issue—the place of Petitioner’s birth.
In addition, trial courts are generally permitted to evaluate credibility of testimony by assessing its level of detail. See Shrestha v. Holder, 590 F.3d 1034, 1040 (9th Cir.2010) (holding that the level of detail in testimony is a “relevant factor” in the “totality of the circumstances” test of credibility employed by immigration judges); see also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir.2008) (allowing an ALJ to employ “ordinary techniques of credibility evaluation,” which include discrediting “vague” testimony); Sparkman v. Comm’r, 509 F.3d 1149, 1156 (9th Cir.2007) (“The Tax Court, describing [a witness’] testimony as ‘vague, contrived, and non-credible,’ plainly did not believe her, and the Tax Court, like any other court, may disregard uncontradicted testimony by a taxpayer where it finds that testimony lacking in credibility.” (some internal quotation marks omitted)).
4. The court permissibly took judicial notice of distances between geographical points. A “court may take judicial notice of undisputed geographical facts.” Muckleshoot Tribe v. Lummi Indian Tribe, 141 F.3d 1355, 1358 n. 4 (9th Cir.1998).
Nevertheless, Petitioner correctly identifies a few findings that are clearly erroneous: that Petitioner was deported in July 1951, September 1951, and November 1952 (the government concedes error as to *1086 these specific dates); and that in 1953 one had to present a birth certificate in order to obtain a Social Security card (as to which there is no evidence in the record, and no document of which the court could take judicial notice).[7]
The crucial question then becomes whether the essential findings — that Petitioner is Salvador Mondaca-Vega, who was born in Mexico and who never became a United States citizen — are clearly erroneous when those erroneous findings are taken out of the mix. We easily conclude that, taken in the context of the entire record and the findings as a whole, the errors pertain to inconsequential points. See Societe Generate de Banque v. Touche Ross & Co. (In re U.S. Fin. Sec. Litig.), 729 F.2d 628, 630 (9th Cir.1984) (noting that we may affirm in reliance on any evidence in the record that supports the trial court’s judgment). In view of the many undisputed facts and the additional non-erroneous subordinate findings, we hold that the district court’s key finding, that Petitioner is Salvador Mondaca-Vega, is not clearly erroneous under the “clear and convincing” standard of proof.
Petition DENIED.

. Petitioner also challenged some of the Board of Immigration Appeal’s procedures, but those claims are moot after the district court proceedings on the nationality claim.

. Knauer and Baumgartner are the first in a line of cases extending through Fedorenko v. United States, 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981) ("[I]n reviewing denaturalization cases, we have carefully examined the record ourselves.” (citing Costello v. United States, 365 U.S. 265, 269-70, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960); Nowak v. United States, 356 U.S. 660, 663, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958))).

. We acknowledge that the First Circuit, in United States v. Zajanckauskas, 441 F.3d 32, 37-38 (1st Cir.2006), held that clear-error review does not apply to a district court’s factual findings in a denaturalization proceeding. For the reasons explained in text, we find our sister court's reasoning unpersuasive.

. “The selection of the appropriate burden of proof is a question of law reviewed de novo.” Taisho Marine & Fire Ins. Co. v. M/V Sea-Land Endurance, 815 F.2d 1270, 1274 (9th Cir.1987). De novo review applies not only to the assignment or allocation of the burden, Molski v. Foley Estates Vineyard & Winery, LLC, 531 F.3d 1043, 1046, 1048 (9th Cir.2008), but also to the quantum of proof required, United States v. Gill, 280 F.3d 923, 929-31 (9th Cir.2002).

. The parties do not dispute what constitutes "clear and convincing” evidence, if that standard applies. Generally, “clear and convincing” evidence requires more than a mere preponderance of the evidence. It consists of evidence that "indicat[es] that the thing to be proved is highly probable or reasonably certain.” United States v. Jordan, 256 F.3d 922, 930 (9th Cir.2001) (alteration in original) (quoting Black’s Law Dictionary 577 (7th ed. 1999)).

. The same reasoning obtains with respect to the district court’s conjecture as to the rea-sorts why Petitioner took various other actions.

. A judge may not take judicial notice in reliance on personal experience. United States v. Berber-Tinoco, 510 F.3d 1083, 1091 (9th Cir.2007). That is what occurred here.

. Our citizenship cases have consistently described the "clear, unequivocal, and convincing” burden of proof in accordance with the Supreme Court's characterization as a heavy burden which does not leave the issue in doubt. See, e.g., United States v. Arango, 670 F.3d 988, 992 (9th Cir.2012) (citizenship case stating that the "clear, unequivocal, and convincing” burden of proof is a "heavy burden”; the government's evidence "must not leave the issue in doubt” (internal quotations and citations omitted)); United States v. Dang, 488 F.3d 1135, 1139 (9th Cir.2007) (same); Lim v. Mitchell, 431 F.2d 197, 199 (9th Cir.1970) (same).